Lindsey R. Simon
Agency Counsel
MONTANA DEPARTMENT OF LABOR AND INDUSTRY
P.O. Box 1728
Helena, MT 59624-1728
Telephone:  (406) 444-5466
Email:      *lindsey.simon2@mt.gov*

*Attorney for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| GLACIER COUNTY REGIONAL PORT AUTHORITY, <br><br> Plaintiff, <br><br> vs. <br><br> LAURIE ESAU, MONTANA HUMAN RIGHTS BUREAU, <br><br> Defendant. | Case No. CV-22-81-GF-BMM-JTJ <br><br> Judge:  Hon. Brian Morris <br><br> DEFENDANTS' BRIEF IN RESPONSE TO PLAINTIFF'S RULE 65 MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER [Doc. 7] |

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................i

TABLE OF AUTHORITIES ........................................................................ iii

I.    INTRODUCTION .................................................................................6

II.   RELEVANT FACTS..............................................................................8

III.  LEGAL STANDARD ..........................................................................10

IV.   ARGUMENT........................................................................................11

A.     Plaintiff is Not Likely to Succeed on the Merits................................12

    1.     Plaintiff Has Not Shown That Enforcement of Mont. Code Ann. § 49-2-312 on the Blackfeet Reservation Would Infringe on the Blackfeet Nation's Tribal Sovereignty.......................................12

    2.     The Doctrines of Ripeness and Exhaustion Requires Dismissal of This Action to Allow the State Administrative Proceedings to Continue ..................................16

    3.     The Doctrine of *Younger* Abstention Requires Dismissal of This Action ..........................................21

B.     Plaintiff Cannot Demonstrate That It Is Likely to Suffer Irreparable Harm if the State Administrative Proceedings Continue ..............................................................23

C.     Both Equity and the Public Interest Weigh Against Enjoining State Anti-Discrimination Proceedings............................25

D.     Plaintiff's Requested Relief Is Overly Broad and Not Narrowly Tailored to Its Alleged Injury ...............................28

V.     CONCLUSION............................................................29

# TABLE OF AUTHORITIES

**Cases**

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ...........................................................9, 22

*AMERCO v. NLRB*, 458 F.3d 883 (9th Cir. 2006) ...................................18

*Am. Passage Media Corp. v. Cass. Commc'ns, Inc.*,
750 F.2d 1470 (9th Cir. 1985) ..............................................................21

*Big Sandy Rancheria Enters. v. Bonta*, 1 F.4th 710 (9th Cir. 2021) .................13–14

*Boardman v. Pac. Seafood Group*, 822 F.3d 1011 (9th Cir. 2016).........................23

*Bresgal v. Brock*, 843 F.2d 1163 (9th Cir. 1987) ....................................26

*Brown v. Jacobsen*, No. CV 21-92-H-DWM,
2021 U.S. Dist. LEXIS 244448 (D. Mont. Dec. 22, 2021) ..................................9

*Downtown Soup Kitchen v. Mun. of Anchorage*,
406 S. Supp. 3d 776 (D. Ala. 2019)........................................................20

*Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463 (1976).............11, 27

*Mont. Human Rights Div. v. Billings*, 649 P.2d 1283 (Mont. 1982) ...........14, 24–25

*Mont. Med. Ass'n v. Knudsen*, No. CV 21-108-M-DWM,
2022 U.S. Dist. LEXIS 48714 (D. Mont. Mar. 18, 2022) .........................23–24

*Montanans for Cmty. Dev. v. Motl*, No. CV-13-70-H-CCL,
2014 U.S. Dist. LEXIS 32896 (D. Mont. Mar. 12, 2014) ..........................16–17

*Morning Hill Foods, LLC v. Hoshijo*,
259 F. Supp. 3d 1113 (D. Haw. 2017).......................................................20–21

*Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, (9th Cir. 2017)............20

*Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*,
477 U.S. 619 (1986)..............................................................................20

*Okla. Tax Comm'n v. Potawatomi Indian Tribe*, 498 U.S. 505 (1991).............11, 27

*Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486 (2022).....................................4, 11, 27

*Pough v. Gillespie*, No. 2:13-cv-00644-JCM-NJK,
2014 U.S. Dist. LEXIS 8297 (D. Nev. Jan. 22, 2014)........................................18

*R.R. Comm'n. of Tex. v. Pullman Co.*, 312 U.S. 496 (1941)...................................25

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*,
754 F.3d 754 (9th Cir. 2014) ..................................................................19–20

*Stevenson v. Felco Indus.*, 216 P.3d 763 (Mont. 2009) ...........................................15

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) ......................................23

*Thomas v. Anchorage Equal Rights Comm'n*,
   220 F.3d 1134 (9th Cir. 2000) (en banc) ...........................................................16

*Twitter, Inc. v. Paxton*, 26 F.4th 1119 (9th Cir. 2022) ...........................................19

*United States v. Braren*, 338 F.3d 971 (9th Cir. 2003)...........................................15

*United States v. Sandoval-Lopez*, 122 F.3d 797 (9th Cir. 1997) ..............................5

*Vasquez v. Kiewit Infrastructure W., Co.*, No. CV 19-00513 HG-WRP,
   2020 U.S. Dist. LEXIS 95533 (D. Haw. June 1, 2020)....................................19

*Villegas Lopez v. Brewer*, 680 F.3d 1068 (9th Cir. 2012).......................................8

*Washington v. Confederated Tribes of Colville Reservation*,
   447 U.S. 134 (1980).....................................................................................11, 27

*White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980) ............4, 10, 12, 27

*Winter v. Cal. Med. Review, Inc.*, 900 F.2d 1322 (9th Cir. 1990)....................16–17

*Winter v. NRDC, Inc.*, 555 U.S. 7 (2008) .................................................................8

*Younger v. Harris*, 401 U.S. 37 (1971)...........................................................19, 25

**Statutes**
18 U.S.C. § 1151 ......................................................................................................10
Mont. Code Ann. § 2-4-704....................................................................................21
Mont. Code Ann. § 49-2-312................................................................................*passim*
Mont. Code Ann. § 49-2-504................................................................................8, 15, 20
Mont. Code Ann. § 49-2-505................................................................................8, 15, 20

**Legislative Materials**
H.B. 702, 67th Leg., Reg. Sess. (Mont. 2021)......................................................6, 7

**Tribal Ordinances**
Blackfeet Tribal Ordinance 121......................................................................*passim*

**Administrative Rules**
Admin. R. Mont. 24.8.103 .......................................................................................15
Admin. R. Mont. 24.8.212 .......................................................................................15
Admin. R. Mont. 24.8.220 .......................................................................................15
Admin. R. Mont. 24.9.125 .......................................................................................15

**Court Rules**

Fed. R. Civ. P. 65 ..........................................................................................................9

## I.    INTRODUCTION

Plaintiff Glacier County Regional Port Authority seeks the extraordinary remedy of a federal injunction enjoining a pending state administrative hearing between a non-tribal entity and a non-Indian based solely on an assertion of tribal sovereignty, even though State of Montana has made no attempts to enforce its laws against the Blackfeet Nation or any of its tribal members.

This case is unlike any of the cases cited by Plaintiff in its *Amended Complaint* (Doc. 3) and *Brief in Support of Rule 65 Motion for Preliminary Injunction and Temporary Restraining Order* (Doc. 7-1) regarding state regulation in Indian Country. No tribes or tribal members are a party to this litigation. No area of substantive federal law is asserted to be so pervasive as to preclude Montana's anti-discrimination laws from applying. Instead, Plaintiff baldly claims that Montana has no authority to enforce Mont. Code Ann. § 49-2-312 within Indian Country—a legal assertion that is demonstrably false given the Supreme Court's recognition in 1980 that "[l]ong ago the Court departed from [the] view that 'the laws of [a State] can have no force' within reservation boundaries." *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 141 (1980); *see also Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2493 (2022) ("[T]he Constitution allows a State to exercise jurisdiction in Indian Country.").

Plaintiff's failure to acknowledge that state regulation in Indian Country is a highly fact-specific inquiry makes sense because, by filing for a preliminary injunctive relief, its goal is to stop the fact-finding process from occurring. Allowing the state administrative hearing to proceed is crucial in this case because it will uncover the very facts that are needed to decide the interplay between Mont. Code Ann. § 49-2-312 and Blackfeet Tribal Ordinance 121 (Ordinance 121), including whether a conflict between the two even exists. *E.g.*, *United States v. Sandoval-Lopez*, 122 F.3d 797, 802 n.9 (9th Cir. 1997) ("We avoid constitutional questions when an alternative basis for disposing of the case presents itself.").

The fact-finding process must be allowed to continue because Plaintiff has offered no evidence to establish the core principle of its case—that Mont. Code Ann. § 49-2-312 is incompatible with Blackfeet tribal interests. Plaintiff has not even provided a copy of Ordinance 121 for the Court's consideration, and the selected quotes it includes in the *Amended Complaint* (Doc. 3) and *Brief in Support of Rule 65 Motion for Preliminary Injunction and Temporary Restraining Order* (Doc. 7-1) do not comport with the most recent version of Ordinance 121 available on the Blackfeet Nation's website. The version available online contains neither a vaccine mandate nor any requirement that individuals attending meetings on the Blackfeet Reservation must be vaccinated. Thus, it does not appear that there is

*any* conflict between the State proceedings and the Blackfeet Nation's tribal sovereignty in this case. Plaintiff's motion must be denied.

## II.    RELEVANT FACTS

On April 1, 2020, the Blackfeet Nation's Tribal Business Council passed a resolution adopting Ordinance 121 to deal with the COVID-19 pandemic on the Blackfeet Reservation, which is located in Glacier and Pondera Counties, Montana.[1] The Blackfeet Nation amended Ordinance 121 on June 9, 2020 via resolution.[2] It does not appear that any other amendments to Ordinance 121 are available on the Blackfeet Nation's website, and Plaintiff has not provided a copy of the version of Ordinance 121 it quotes in the *Amended Complaint*.

During the 2021 session, the Montana Legislature passed House Bill 702, later codified within the Montana Human Rights Act (MHRA) as Mont. Code Ann. § 49-2-312.[3] The subsection of § 49-2-312 that is most relevant to this case states that it is unlawful discriminatory practice for:

> (a) a person or a governmental entity to refuse, withhold from, or deny to a person any local or state services, goods, facilities, advantages, privileges, licensing, educational opportunities, health

---

[1] Blackfeet Tribal Bus. Council Res. No. 182-2020 (Apr. 1, 2020), *available at https://blackfeetnation.com/wp-content/uploads/2020/05/11.-Blackfeet-Tribe_Resolution_Approving-the-Blackfeet-Tribe-COVID-19-Ordinance_April-1_2020.pdf.*

[2] Blackfeet Tribal Bus. Council Res. 223-2020 (June 9, 2020), *available at https://blackfeetnation.com/wp-content/uploads/2020/06/Blackfeet-Tribe_Resolution-223-2020.pdf.*

[3] A copy of H.B. 702 is available online at *https://leg.mt.gov/bills/2021/billpdf/HB0702.pdf.*

care access, or employment opportunities based on the person's vaccination status or whether the person has an immunity passport;

(b) an employer to refuse employment to a person, to bar a person from employment, or to discriminate against a person in compensation or in a term, condition, or privilege of employment based on the person's vaccination status or whether the person has an immunity passport; or

(c) a public accommodation to exclude, limit, segregate, refuse to serve, or otherwise discriminate against a person based on the person's vaccination status or whether the person has an immunity passport.

Mont. Code Ann. § 49-2-312(1). The statute went into effect on July 1, 2021. H.B. 702, 67th Leg., Reg. Sess., § 6 (Mont. 2021).

Plaintiff alleges that prior to the COVID-19 pandemic, it alternated holding board meetings between Browning, Montana (on the Blackfeet Reservation) and Cut Bank, Montana (outside of the Blackfeet Reservation). (Doc. 3, ¶ 10). Plaintiff further alleges that it stopped holding meetings in Browning "during the early phases of the pandemic" but moved its meeting back to Browning in November 2021. *Id.* at ¶¶ 10–11. Plaintiff alleges that J.R. Myers (Myers), a non-Indian, "attempted to appear in-person at the meeting" in Browning. *Id.* at ¶ 14. While Plaintiff does not explicitly allege that Myers was not permitted to attend the November 2021 meeting due to his vaccination status, it heavily implies this by its allegation that "the Blackfeet Tribal Business Council's Tribal Ordinance 121 was in effect requiring mandatory vaccination against COVID-19 for persons attending meetings in-person" and that Myers was not vaccinated. (Doc. 3, ¶¶ 13–14.)

Myers subsequently filed a complaint against Plaintiff with the Montana Department of Labor and Industry's Human Rights Bureau (MHRB). MHRB investigated per its authority under Mont. Code Ann. § 49-2-504, and MHRB's informal investigation resulted in a reasonable cause finding of discrimination. (Doc. 3, ¶¶ 15–16). Pursuant to Mont. Code Ann. § 49-2-504(7)(c), this finding initiated a contested case hearing before the Department's Office of Administrative Hearings (OAH). *See also* Mont. Code Ann. § 49-2-505; *id*. ¶ 16. The OAH hearing has been scheduled but has not yet occurred. (Doc. 3, ¶ 16).

## III.   LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). It is a remedy "that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Villeagas Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). The plaintiff must satisfy all of the following four elements: (1) that it is likely to succeed on the merits; (2) that it is likely to suffer some irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in its favor; and (4) that an injunction would be in the public interest. *Winter*, 555 U.S. at 20.

The Ninth Circuit uses a sliding scale approach when considering the four factors that a plaintiff must satisfy to obtain preliminary injunctive relief, which means that "a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

The standard of issuing a temporary restraining order under Fed. R. Civ. P. 65(b) is the same standard as applied to preliminary injunctions. *Brown v. Jacobsen*, No. CV 21-92-H-DWM, 2021 U.S. Dist. LEXIS 244448, *2 (D. Mont. Dec. 22, 2021) (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)).

## IV.   ARGUMENT

Plaintiff has not and cannot meet its burden to obtain preliminary injunctive relief in this case because it cannot satisfy any of the required elements. Not only is Plaintiff unlikely to succeed on the merits of its tribal sovereignty argument, but its assertion of irreparable harm is wholly conclusory and unsupported by specific facts. In addition, a balance of the equities weighs in Defendants' favor because its interests are in line with the public interest. Finally, the requested relief is overbroad and is not narrowly tailored to the alleged injury in this case. The motion for preliminary injunctive relief must be denied.

The entirety of Plaintiff's argument in this case is predicated on the faulty assertion that the State of Montana has no authority to enforce Mont. Code Ann. § 49-2-312 within Indian Country, as defined in 18 U.S.C. § 1151. Not only is this untrue, but there are no federal or tribal interests that conflict with the continued prosecution of Myers' discrimination complaint before MHRB, and thus there is no basis for preliminary injunctive relief.

**A.     Plaintiff is Not Likely to Succeed on the Merits**

Plaintiff has not established that it is likely to succeed on the merits because it vastly oversimplifies the limits of state jurisdiction over non-Indians in Indian Country, because there is no conflict between the state regulation and tribal sovereignty in this case, and because the doctrines of ripeness, exhaustion, and *Younger* abstention all weigh in MHRB's favor in this case.

        1.     <u>Plaintiff Has Not Shown That Enforcement of Mont. Code Ann. § 49-2-312 on the Blackfeet Reservation Would Infringe on the Blackfeet Nation's Tribal Sovereignty</u>

Whether a state can exercise regulatory authority of non-Indians on a reservation

> is not dependent on mechanical or absolute conceptions of state or tribal sovereignty, but has called for a particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law.

*White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 145 (1980). This is a case-by-case analysis and cannot be reduced to simplified, misleading statements

such as Plaintiff's assertion that "MHRB has no jurisdiction to enforce § 49-2-312, MCA, on tribal land pursuant to 18 U.S.C. § 1151." (Doc. 3, ¶ 18). Not only has the Supreme Court explicitly stated that "the Constitution allows a State to exercise jurisdiction in Indian Country," federal case law is full of examples where the Courts have decided that state regulation over the activity of non-Indians in Indian Country can occur. *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2493 (2022); *see also Okla. Tax Comm'n v. Potawatomi Indian Tribe*, 498 U.S. 505 (1991); *Washington v. Confederated Tribes of Colville Reservation*, 447 U.S. 134 (1980); *Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463 (1976). As the Supreme Court held in *Castro-Huerta*, absent federal preemption, "a state has jurisdiction over all of its territory, including Indian country." 142 S. Ct. at 2493.

Plaintiff asserts that tribal sovereignty would be impaired in this case if Myers' discrimination complaint were allowed to proceed through state administrative channels because the Blackfeet Nation's right to exclude non-vaccinated visitors is a fundamental attribute of tribal sovereignty. Defendants do not dispute that the Blackfeet Nation's tribal sovereignty includes the right to exclude, but they do dispute Plaintiff's assertion that the Blackfeet Nation has exercised this sovereign power in a manner that conflicts with Mont. Code Ann. § 49-2-312 when applied to non-Indians and non-tribal entities.

Plaintiff has conspicuously failed to include a copy of Ordinance 121 and merely asserts that the ordinance "was *in effect* requiring mandatory vaccination against COVID-19 for persons attending meetings in-person." (Doc. 7-1, at 2) (emphasis added). "In effect" is not in actuality. Plaintiff never quotes any portion of Ordinance 121 that imposes a vaccine requirement and states only that the ordinance authorized mandatory vaccination. There is no evidence in the record that the Blackfeet Nation ever implemented a vaccine mandate.

This is fatal to Plaintiff's argument because there are only two ways in which state regulation of non-Indians in Indian Country can be struck down: (1) when the exercise of state regulation is preempted by federal law, and (2) when the state regulation would "unlawfully infringe 'on the right of reservation Indians to make their own laws and be ruled by them.'" *Bracker*, 448 U.S. at 142 (quoting *Williams v. Lee*, 358 U.S. 217, 220 (1959)). Plaintiff makes no argument that there is a body of federal law that preempts the MHRA in this case and instead asserts only that State enforcement threatens the Blackfeet Nation's health and welfare.

Plaintiff has no explanation for how enforcement of Mont. Code. Ann. § 49-2-312 threatens the Blackfeet Nation sovereignty when the tribe itself does not have a COVID-19 vaccine mandate. That is why Plaintiff must rely on (erroneous) sweeping generalizations such as that the State has no ability to regulate in Indian Country. In actuality, the inquiry is highly factual, and the most relevant factors are

*who* is being regulated and *what* conduct is being regulated. As the Ninth Circuit

has said, "[w]hether state regulation infringes tribal sovereignty depends on *who* is

being regulated—Indians or non-Indians—and *where* the activity to be regulated

takes place—on or off a tribe's reservation." *Big Sandy Rancheria Enters. v.*

*Bonta*, 1 F.4th 710, 725 (9th Cir. 2021) (citing *Wagnon v. Prairie Band of*

*Potawatomi Nation*, 546 U.S. 95, 101 (2005)).

In this case, the facts are not developed enough to know which of Plaintiff's

acts potentially violate Mont. Code Ann. § 49-2-312. It could be inquiring into Mr.

Myers' vaccination status at the November 2021 meeting on the Blackfeet

Reservation, or it could be Plaintiff's decision to hold its board meeting on the

Blackfeet Reservation with the intent to avoid Mont. Code Ann. § 49-2-312 and

exclude non-vaccinated individuals. The latter situation could be considered off-

reservation conduct that is unquestionably subject to state regulation. Regardless,

the mere fact that the discriminatory act was carried out in Indian Country does

not, and should not, immunize Plaintiff from state regulation and instead requires a

court to engage in a balancing test:

> [W]hen a state "asserts authority over the conduct of *non-Indians*
> engaging in activity on the reservation," courts must conduct "a
> particularized inquiry into" and balance the "state, federal, and tribal
> interests at stake." *Bracker*, 448 U.S. at 145 (emphasis added). Under
> *Braker*'s balancing test, "State jurisdiction is preempted by the
> operation of federal law if it interferes or is incompatible with federal
> and tribal interests reflected in federal law, unless the state interests at
> stake are sufficient to justify the assertion of state authority." *New*

*Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 334, 103 S. Ct. 2378, 76 L. Ed. 2d 611 (1983).

*Big Sandy Rancheria Enters.*, 1 F.4th at 725–26.

The Department of Labor and Industry (Department) has a substantial and legitimate interest in preventing non-Indians from entering Indian Country to discriminate against other non-Indians and using tribal sovereignty as a shield from liability, and the Department must be empowered to investigate and hold fact-finding proceedings to ensure that this does not occur. *See Mont. Human Rights Div. v. Billings*, 649 P.2d 1283 (Mont. 1982) (noting that the Montana Human Rights Act codifies a compelling state interest). Plaintiff's assertion that it is likely to prevail on the merits entirely fails to address the Department's interest.

Additionally, as explained below and in *Defendants' Brief in Support of Motion to Dismiss Plaintiff's Amended Complaint*, filed contemporaneously herewith, the doctrines of ripeness, exhaustion, and *Younger* abstention all support denying Plaintiff's motion for injunctive relief and allowing the OAH hearing to proceed.

2. <u>The Doctrines of Ripeness and Exhaustion Requires Dismissal of This Action to Allow the State Administrative Proceedings to Continue</u>

Defendants' ripeness and exhaustion arguments require this Court to have an accurate understanding of the State administrative proceedings against Plaintiff. Accordingly, Plaintiff's misrepresentation that "MHRB has since determined the

Port Authority engaged in illegal discrimination under § 49-2-312, MCA, when it required in-person attendees at the Browning meeting to show proof of vaccination" (Doc. 7-1, at 2–3) must be corrected.

MHRB has made no determination that Plaintiff discriminated against Myers in this case, let alone determined the specific factual basis for the alleged discrimination. MHRB has merely completed an informal investigation pursuant to Mont. Code Ann. § 49-2-504(1) and Admin. R. Mont. 24.8.212 and .220(1) and found that there is reasonable cause to believe the discrimination occurred. A "reasonable cause" simply means that a preponderance of the evidence supports a finding of unlawful discrimination and that the matter will proceed to a contested case hearing. Admin. R. Mont. 24.8.103(13); Mont. Code Ann. §§ 49-2-504(7)(c) & -505.

The MHRB's investigative findings are not the final agency action, and its findings are not transmitted to the hearing officer that presides over the contested case hearing because they are inadmissible. *Cf. Stevenson v. Felco Indus.*, 216 P.3d 763 (Mont. 2009). There is no final agency determination on a discrimination complaint where reasonable cause has been found until the hearing officer issues a decision that has been reviewed by (or not appealed to) the MHRC. Mont. Code Ann. § 49-2-505(5); Admin. R. Mont. 24.9.125(4). All of the fact-finding relevant to the final agency action occurs at the evidentiary contested case hearing. Since

the hearing has not occurred in this case, this matter is not appropriate for review by a federal court under the doctrines of ripeness and exhaustion.

"The Doctrine of Ripeness is intended 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Montanans for Cmty. Dev. v. Motl*, No. CV-13-70-H-CCL, 2014 U.S. Dist. LEXIS 32896, *6 (D. Mont. Mar. 12, 2014) (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc)). Ripeness has both a constitutional and prudential component, the second of which is implicated here. When the issue at hand involves state administrative action, exhaustion becomes a part of the prudential ripeness analysis because

> [Ninth Circuit] past decisions have explicitly mandated that an agency action be final before a declaratory judgment action is ripe: "the ripeness doctrine was designed . . . to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by challenging parties."

*United States v. Braren*, 338 F.3d 971, 975 (9th Cir. 2003) (quoting *Lee Pharm. v. Kreps*, 577 F.2d 610, 618 (9th Cir. 1978) (internal quotations omitted)).

The analysis involves looking at two considerations: "[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1141 (9th Cir. 2000) (en banc). "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged

action is final." *Winter v. Cal. Med. Review, Inc.*, 900 F.2d 1322, 1325 (9th Cir. 1990) (internal quotation marks and citation omitted).

The issues before the Court and OAH in this case are *not* primarily legal in nature. There is still the glaring factual issue of what the Plaintiff's alleged discrimination conduct was—was it merely enforcing Ordinance 121 at the doors of its November 2021 meeting? Or was it deciding to hold the meeting on the Blackfeet Reservation in order to have a reason to exclude non-vaccinated individuals? Or was it inquiring into Myers' vaccination status at all? Exhaustion of State administrative remedies will develop these factual issues, and that is why "[i]n an administrative action, it is an explicit requirement that state agency action be final before a declaratory judgment action can be considered ripe for adjudication." *Motl*, 2014 U.S. Dist. LEXIS 32896, at *7.

In *Motl*, District Judge Lovell denied a request for a preliminary injunction to stay proceedings by the Montana Commissioner of Political Practices because "it is patently clear that the agency decision is not final because the Commissioner is currently awaiting [the plaintiff's] filing of an amended petition for the purpose of further factual development." *Id.* at *8. In so holding, Judge Lovell cited to Ninth Circuit precedent holding that "[c]ourts should avoid pre-enforcement challenges that do not permit enforcement agencies to refine their policies." *Id.* (quoting *Ammex, Inc. v. Cox*, 351 F.3d 697, 708 (6th Cir. 2003)).

The Department must receive the same opportunity the Commission on Political Practices received in *Motl* and be allowed to decide how, under the facts of this case, Ordinance 121 interacts with Mont. Code Ann. § 49-2-312. There is no attempt by the Department to enforce the state law against the Blackfeet Nation or its members, and thus there is no hardship in allowing the administrative action to proceed in this case.

The doctrine of administrative exhaustion is founded on very similar principles as the prudential ripeness. "Exhaustion serves two vital purposes: first, to give the agency an initial opportunity to correct its mistakes before courts intervene; and second, to enable the creation of a complete administrative record should judicial review become necessary." *AMERCO v. NLRB*, 458 F.3d 883, 888 (9th Cir. 2006) (citation omitted). "The exhaustion requirement insures that the state courts, as a matter of federal-state comity, will have the first opportunity to pass upon and correct alleged violations of federal constitutional guarantees." *Pough v. Gillespie*, No. 2:13-cv-00644-JCM-NJK, 2014 U.S. Dist. LEXIS 8297, *6–7 (D. Nev. Jan. 22, 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)).

Neither of the two core purposes of administrative exhaustion will be met if this Court were to issue a preliminary injunction, but the Department would be deprived of an opportunity to resolve any potential conflict between Mont. Code

Ann. § 49-2-312 and Ordinance 121, and Plaintiff and Myers would be deprived of an opportunity to establish a factual record that will establish whether there is any conflict between the two laws.

Both ripeness and failure to exhaust are grounds to dismiss an action for failure to state a claim upon which relief may be granted, and thus both significantly and adversely affect Plaintiff's likelihood of success on the merits. *See, e.g., Vasquez v. Kiewit Infrastructure W., Co.*, No. CV 19-00513 HG-WRP, 2020 U.S. Dist. LEXIS 95533 (D. Haw. June 1, 2020); *Twitter, Inc. v. Paxton*, 26 F.4th 1119, 1124 (9th Cir. 2022).

      3.    The Doctrine of *Younger* Abstention Requires Dismissal of This Action

The judicial doctrine of abstention also weighs against the likelihood of Plaintiff's success in this case because "time and time again . . . the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Younger v. Harris*, 401 U.S. 37, 45 (1971).

The *Younger* abstention doctrine was expanded beyond criminal prosecutions like the one at issue in *Younger* to include state civil enforcement proceedings that: "(1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal

challenges." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014).

This case involves ongoing State civil enforcement proceedings, because the Ninth Circuit has held that "ongoing" means initiated "before any proceedings of substance on the merits have taken place in the federal court." *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 728 (9th Cir. 2017) (quoting *Hicks v. Miranda*, 422 U.S. 332, 349 (1975)). It is also implicates an important state interest because State discrimination complaints that have proceeded past the initial investigation stage qualify. *See Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619 (1986); *Morning Hill Foods, LLC v. Hoshijo*, 259 F. Supp. 3d 1113 (D. Haw. 2017); *cf. Downtown Soup Kitchen v. Mun. of Anchorage*, 406 S. Supp. 3d 776 (D. Ala. 2019).

While the discrimination complaint in this case was not technically initiated by the MHRB, a reasonable cause finding by either MHRB or the MHRC is a prerequisite for a case to proceed to an administrative contested case hearing. Mont. Code Ann. §§ 49-2-504(7)(c) & -505(1). Thus, the same rationale that courts applied in cases that involved state-initiated enforcement proceedings apply here.

Finally, Plaintiff has an opportunity to raise tribal sovereignty and any obligation to follow Ordinance 121 as a defense in the OAH contested case

hearing, satisfying the final element of expanded *Younger* abstention. Plaintiff may also challenge on judicial review a final agency action that was entered in violation of constitutional provisions. Mont. Code Ann. § 2-4-704(2)(a)(i). "The Supreme Court has held that even if the underlying administrative proceedings do *not* provide litigants with the opportunity to bring their constitutional challenges, it is sufficient that constitutional claims may be raised in state-court judicial review of the administrative proceeding." *Hoshijo*, 259 F. Supp. 3d at 1122–23.

For all these reasons, *Younger* abstention precludes Plaintiff's request for a preliminary injunction, further establishing that Plaintiff does not have a likelihood of success on the merits.

## B.     Plaintiff Cannot Demonstrate That It Is Likely to Suffer Irreparable Harm if the State Administrative Proceedings Continue

Plaintiff has failed to establish that it would suffer irreparable harm if the administrative contested case hearing was allowed to go forward. "[A]ffidavits [that] are conclusory and without sufficient support in fact" will not support a finding of irreparable injury. *Am. Passage Media Corp. v. Cass. Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985). The only evidence of irreparable harm Plaintiff provides is a conclusory statement by Brenda Schilling that "[t]he Port Authority will also suffer irreparable damage to our relationship with the Tribe if we were to begin holding our meetings off the reservation." (Doc. 7-2, ¶ 9).

However, Plaintiff has made no showing as to why the Department's proceedings would be responsible for Plaintiff's decision to hold its meetings off the reservation. There is no evidence that the Blackfeet Reservation has a vaccine mandate that makes it impossible for Plaintiff to comport with both Mont. Code Ann. § 49-2-312 and tribal law, so if Plaintiff's relationship with the Blackfeet Nation were to suffer if the held meetings of the reservation, that is not attributable to the Department's proceedings.

Plaintiff also "must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). In this case, there has been no finding by a hearing officer that discrimination occurred—only a reasonable cause finding that occurred pursuant to an informal investigation. It is still possible that Plaintiff will prevail at its contested case hearing by asserting tribal law as a defense, and thus there is no likelihood of irreparable damage at this point.

Finally, even if the Blackfeet Nation did have a vaccine mandate, there has been no showing that it is still in effect, let alone that it will continue in perpetuity and prohibit the Plaintiff from ever holding meetings on the Blackfeet Reservation again. The area of COVID-19 protective measures is an ever-evolving area subject to constant revisions, as evidenced by the fact that the Blackfeet Nation has already

loosened some of its initial restrictions imposed in response to the COVID-19 pandemic.[4]

## C.   Both Equity and the Public Interest Weigh Against Enjoining State Anti-Discrimination Proceedings

"Where the government is the opposing party, the third and fourth factors of the preliminary injunction inquiry merge, so that the balance of the equities and the public interest are considered together." *Mont. Med. Ass'n v. Knudsen*, No. CV 21-108-M-DWM, 2022 U.S. Dist. LEXIS 48714, *24 (D. Mont. Mar. 18, 2022) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

The balancing of the equities analysis requires the court "to balance the interests of all parties and weigh the damage to each.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (quoting *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980)). Considerations include whether "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences." *Boardman v. Pac. Seafood Group*, 822 F.3d 1011, 1023–24 (9th Cir. 2016) (quoting *Stormans*, 586 F.3d at 1138–39).

As noted above, Plaintiff cannot show that Mont. Code Ann. § 49-2-312 conflicts with or infringes on any federal law or tribal law. Given that there is no

---

[4] Press Release, Blackfeet Nation, Blackfeet lists mask mandate, opens tribal offices (Mar. 14, 2022), https://blackfeetnation.com/2022/03/; *see also* Press Release, Blackfeet Nation (Mar. 17. 2021, available at https://blackfeetnation.com/wp-content/uploads/2021/03/Press-Release-March-17-2021.pdf.

evidence that the Blackfeet Nation implemented a vaccine mandate, there is no appreciable threat to tribal sovereignty if the contested case hearing against Plaintiff were to proceed. The balancing in this case comes down to Plaintiff wanting to be free from state regulation simply by being physically in Indian Country, and the Department wanting to ensure that State anti-discrimination laws cannot be skirted by non-Indians who merely step across reservation boundaries to conduct their business.

The Department's interest is the public interest, while Plaintiff's interest is purely self-serving (despite being cloaked as an issue of tribal sovereignty). Judge Molloy in this district has noted that "the codification of House Bill 702 in §§ 49-2-312 and 49-2-313 in some way expresses the public's interest because the legislature passed the law." *Mont. Med. Ass'n*, 2022 U.S. Dist. LEXIS 48714, at *25. In *Mont. Med Ass'n*, Judge Molloy granted a limited preliminary injunction primarily because federal law conflicted with the specific application of Mont. Code Ann. § 49-2-312 at issue, and "principles of federalism, including the Supremacy Clause, elevate[d] the interests" of the plaintiffs in that case. *Id.* at *27. There has been no showing that any such conflict exists in this case. Plaintiff has not produced a version of Ordinance 121 that conflicts with the application of Mont. Code Ann. § 49-2-312 in this case, and the duly enacted State law expresses the public interest, as does the remainder of the MHRA. *See Mont. Human Rights*

*Div. v. Billings*, 649 P.2d 1283 (Mont. 1982). It is crucial to note that Plaintiff is

not just challenging Mont. Code Ann. § 49-2-312—it is challenging the application

of the entirety of the MHRA on Indian Country. This case is not just about

COVID-19 vaccines—it is about the ability of a non-Indian to enter a reservation,

engage in discriminatory acts against other non-Indians, and shield itself from state

regulation.

Additionally, the principle behind the *Younger* abstention doctrine is also

relevant to the balance of the equities because "[s]ince the beginning of this

country's history Congress has, subject to a few exceptions, manifested a desire to

permit state courts to try state cases free from interference by federal courts."

*Younger v. Harris*, 401 U.S. 37, 43 (1971).

> Few public interests have a higher claim upon the discretion of a
> federal chancellor than the avoidance of needless friction with state
> policies, whether the policy relates to the enforcement of the criminal
> law, or the administration of a specialized scheme for liquidating
> embarrassed business enterprises, or the final authority of a state court
> to interpret doubtful regulatory laws of the state. These cases reflect a
> doctrine of abstention appropriate to our federal system whereby the
> federal courts, "exercising a wise discretion," restrain their authority
> because of "scrupulous regard for the rightful independence of the
> state governments" and for the smooth working of the federal
> judiciary. This use of equitable powers is a contribution of the courts
> in furthering the harmonious relation between state and federal
> authority without the need of rigorous congressional restriction of
> those powers.

*R.R. Comm'n. of Tex. v. Pullman Co.*, 312 U.S. 496, 500–01 (1941) (internal

citations omitted).

It is in the public's interest to allow a fact-finding proceeding to go forward and to allow Plaintiff to assert any defenses based on Ordinance 121 in the OAH hearing, rather than for a federal court to step in and effectively immunize a non-tribal entity from scrutiny simply because it elected to act inside Indian Country. Plaintiff's request for injunctive relief must be denied.

## D. Plaintiff's Requested Relief Is Overly Broad and Not Narrowly Tailored to Its Alleged Injury

Preliminary injunctions are an extraordinary remedy and, as such, any injunctive relief must be "narrowly tailored to remedy the specific harm shown." *Bresgal v. Brock*, 843 F.2d 1163, 1170 (9th Cir. 1987). The relief requested by Plaintiff, however, goes far beyond the scope of the facts at issue in this case. This case concerns only whether enforcement of Mont. Code Ann. § 49-2-312 against Plaintiff infringes on the Blackfeet Nation's exercise of tribal sovereignty as illustrated by Ordinance 121. Yet Plaintiff seeks an injunction holding that Department's Commission cannot enforce § 49-2-312 against Plaintiff "and other non-Indian members' activities occurring on tribal lands." (Doc. 7-1, at 8).

Plaintiff has not shown that § 49-2-312 conflicts with the Blackfeet Nation's laws, let alone whether there a conflict with the laws of any of the resident tribes on the other six Indian reservation in the State of Montana. As explained above, the issue of whether the OAH hearing against Plaintiff can continue is not as simple as whether the state can enforce its laws in Indian Country. If it were that

simple, Plaintiff unquestionably loses, because it is well established that a state *can* regulate non-Indians within Indian Country. *E.g.*, *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2493 (2022); *Okla. Tax Comm'n v. Potawatomi Indian Tribe*, 498 U.S. 505 (1991); *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 141 (1980); *Washington v. Confederated Tribes of Colville Reservation*, 447 U.S. 134 (1980); *Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463 (1976).

Tribal sovereignty is only a barrier to state regulation if the state regulation unlawfully infringes on a tribe's right to make its own laws and be ruled by them. *Bracker*, 448 U.S. at 142. That necessarily requires looking at the tribe's specific laws and practices. Plaintiff has provided no evidence that any of the other six tribal governments occupying Montana reservations have enacted any vaccine mandates or other ordinances that conflict with Mont. Code Ann. § 49-2-312. It is also entirely presumptuous of Plaintiff to assert those tribes' tribal sovereignty as a reason for why it should be allowed to enter their reservations and be free to discriminate in violation of the MHRA.

Plaintiff's request for a preliminary injunction is overbroad and not narrowly tailored to its alleged harm, and thus it must be denied.

## V.   CONCLUSION

This Court must not impose the extraordinary remedy of federal preliminary injunctive relief to stop state discrimination proceedings based on Plaintiff's

unproven assertion that Ordinance 121 conflicts with Mont. Code Ann. § 49-2-312. No conflict between the MHRB proceedings and the Blackfeet Nation's tribal sovereignty has been shown in this case. Plaintiff does not have a likelihood of success, has no evidence of irreparable injury, has not prevailed in a balancing of the equities, and requests relief that is not narrowly tailored. The motion must be denied, and the administrative contested case hearing must be allowed to proceed.

DATED this 20th day of October, 2022.

*/s/ Lindsey R. Simon*
LINDSEY R. SIMON
Montana Department of Labor and Industry
Attorney for Defendant

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), I certify that this Defendant's Brief in Response to Plaintiff's Rule 65 Motion for Preliminary Injunction and Temporary Restraining Order is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count, calculated by Microsoft Word for Windows is 5,841 words long, excluding caption, certificates of service and compliance, and if required, any tables of contents and authorities, and exhibit index.

By: */s/ Lindsey R. Simon*
LINDSEY R. SIMON

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I electronically filed the foregoing

document with the clerk of the court for the United States District Court for the

District of Montana, using the CM/ECF system. Participants in the case who are

registered CM/ECF users will be served by the CM/ECF system.

DATED this 20th day of October, 2022.

By: */s/ Lindsey R. Simon*
    LINDSEY R. SIMON
    Montana Department of Labor and Industry
    Attorney for Defendants