Wesley James Furlong (MT Bar No. 42771409)
NATIVE AMERICAN RIGHTS FUND
745 West 4th Avenue, Suite 502
Anchorage, AK 99501
Phone: (907) 276-0680
Fax: (907) 276-2466
wfurlong@narf.org

*Counsel for Proposed Intervenor-Plaintiff Blackfeet Nation*
*Additional Counsel Listed on Signature Page*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| GLACIER COUNTY REGIONAL PORT AUTHORITY,<br><br>Plaintiff,<br><br>v.<br><br>LAURIE ESAU and MONTANA HUMAN RIGHTS BUREAU,<br><br>Defendants. | Case No. 4:22-cv-00081-BMM<br><br>**PROPOSED INTERVENOR-PLAINTIFF'S BRIEF IN SUPPORT OF RULE 24 MOTION TO INTERVENE**<br><br>Chief District Judge Brian M. Morris |

# TABLE OF CONTENTS

I.   FACTUAL BACKGROUND ...................................................................................1

II.  ARGUMENT ......................................................................................................2

    A.  The Blackfeet Nation Meets the Requirements
        for Intervention as a Matter of Right.........................................................2

        1.  The Blackfeet Nation's Motion for Intervention is Timely............4

        2.  The Blackfeet Nation Has a Significantly Protectable Interest
           in the Present Litigation and an Adverse Ruling Would
           Impair its Ability to Protect that Interest. .......................................6

        3.  The Existing Parties Do Not Adequately Represent
           the Blackfeet Nation's Interests. ....................................................9

    B.  Alternatively, the Blackfeet Nation Meets the Requirements
        for Permissive Intervention. ....................................................................11

CONCLUSION ........................................................................................................12

# TABLE OF AUTHORITIES

## CASES

*Arakaki v. Cayetano,*
        324 F.3d 1078 (9th Cir. 2003) ................................................................. 3, 9-10

*Beckman Indus., Inc. v. Int'l Ins. Co.,*
        966 F.2d 470 (9th Cir. 1972) ......................................................................11

*Ctr. for Biological Diversity v. Berg,*
        268 F.3d 810 (9th Cir. 2001) ........................................................................9

*Ctr. for Biological Diversity v. U.S. Forest Serv.,*
        No. CV 22-91-M-DLC-KLD, 2022 WL 3910743
        (D. Mont. Aug. 31, 2022) ...........................................................................10

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
        647 F.3d 893 (9th Cir. 2011) ...................................................................... 4-5

*Cnty. of Fresno v. Andrus,*
        622 F.2d 436 (9th Cir. 1980).........................................................................6

*Cnty. of Orange v. Air Cal.,*
        799 F.2d 535 (9th Cir.1986) ..........................................................................4

*Cummings v. United States,*
        704 F.2d 437 (9th Cir. 1983) .........................................................................6

*Day v. Apoliona,*
        505 F.3d 963 (9th Cir. 2007) .........................................................................5

*Donnelly v. Glickman,*
        159 F.3d 405 (9th Cir. 1998) ......................................................................3, 7

*Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.,*
        983 F.2d 211 (11th Cir. 1993) .....................................................................10

*Forest Conservation Council v. U.S. Forest Serv.,*
        66 F.3d 1489 (9th Cir. 1995) ................................................................... 3-4, 7

*Greene v. United States,*
    996 F.2d 973 (9th Cir. 1993) ............................................................6

*Helena Hunters & Anglers Ass'n v. Marten,*
    No. CV 19-17-M-DLC, 2019 WL 3973707 (D. Mont. Aug. 22, 2019).... 9-10

*Kootenai Tribe of Idaho v. Veneman,*
    313 F.3d 1094 (9th Cir. 2002) ........................................................11

*Miami Tribe of Okla. v. Walden,*
    206 F.R.D. 238 (S.D. Ill. 2001) ........................................................7

*Mont. Wildlife Fed'n v. Bernhardt,*
    No. CV-18-69-GF-BMM, 2022 WL 2438963 (D. Mont. July 5, 2022) .........3

*Portland Audubon Soc'y v. Hodel,*
    866 F.2d 302 (9th Cir. 1989) ............................................................6

*Sierra Club v. City of San Antonio,*
    115 F.3d 311 (5th Cir. 1997) ............................................................7

*Sierra Club v. U.S. Env't Prot. Agency,*
    995 F.2d 1478 (9th Cir. 1993) ..........................................................7

*Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States,*
    921 F.2d 924 (9th Cir. 1990) ........................................................ 7-8

*Smith v. L.A. Unified Sch. Dist.,*
    830 F.3d 843 (9th Cir. 2016) ............................................................4

*Smith v. Marsh,*
    194 F.3d 1045 (9th Cir. 1999) ..........................................................4

*Strate v. A-1 Contractors,*
    520 U.S. 438 (1997).......................................................................8

*Sw. Ctr. for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001) ............................................................9

*Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.,*
    951 F.3d 1142 (9th Cir. 2020) ........................................................................9

*Wilderness Soc. v. U.S. Forest Serv.,*
    630 F.3d 1173 (9th Cir. 2011) ........................................................................3

*Wilson v. Horton's Towing,*
    906 F.3d 773, 778 (9th Cir. 2018) ..................................................................8

*United States v. Alisal Water Corp.,*
    370 F.3d 915 (9th Cir. 2004) ..........................................................................5

*United States v. City of Chicago,*
    870 F.2d 1256, 1263 (7th Cir. 1989) ..............................................................6

*United States v. City of L.A.,*
    288 F.3d 391 (9th Cir. 2002) ....................................................................3-4, 6

*United States v. Oregon,*
    745 F.2d 550 (9th Cir. 1984) ..........................................................................4

*United States v. Oregon,*
    913 F.2d 576 (9th Cir. 1990) ..........................................................................6

*United States v. Washington,*
    86 F.3d 1499 (9th Cir. 1996) ..........................................................................5

**STATUTES**

Mont. Code Ann. § 49-2-312 (2021) .....................................................................2

**TREATIES**

Treaty with the Blackfoot Indians, art. 4, 11 Stat 657 (1855) .............................. 8-9

**RULES**

Fed. R. of Civ. P. 24(a) ........................................................................................1

Fed. R. of Civ. P. 24(a)(2)...............................................................................1, 2-3

Fed. R. of Civ. P. 24(b) ........................................................................1, 11

Fed. R. of Civ. P. 24(b)(1) ..........................................................................1

## LEGISLATIVE

H.B. 702, 67th Leg., Reg. Sess. (Mont. 2021)..............................................2

## OTHER AUTHORITIES

6 Daniel R. Coquillette et al.,
    *Moore's Federal Practice* § 24.03[4][a][i] (3d ed. 1997)..............................10

7C Charles A. Wright et al.,
    *Wright, Miller & Kane*, § 1913.......................................................................11

Pursuant to Federal Rule of Civil Procedure 24(a) and (b), the Blackfeet Nation of the Blackfeet Indian Reservation ("Blackfeet Nation" or "the Nation"), a federally recognized tribe, respectfully moves this Court to grant the Nation intervention as a matter of right, under Rule 24(a)(2) or, in the alternative, grant permissive intervention under Rule 24(b)(1). The Blackfeet Nation seeks intervention in support of Plaintiff, Glacier County Regional Port Authority ("Port Authority"). The Nation also requests that the hearing on Plaintiff's motion for a preliminary injunction and temporary restraining order, scheduled for November 2, 2022, be continued until after this Court rules on Nation's motion for intervention.

Undersigned counsel for the Nation contacted counsel for the other parties regarding this motion. Plaintiff Port Authority does not oppose the Motion. Defendants oppose the motion.

## I.   FACTUAL BACKGROUND

In November 2021, the Port Authority held a board meeting at the Blackfeet Community College, located on within the Blackfeet Indian Reservation. A non-Indian member of the public, J.R. Myers, allegedly attempted to attend the meeting in-person, but was purportedly refused entry due to not being vaccinated against COVID-19. Mr. Myers filed a complaint against the Port Authority with the Montana Human Rights Bureau ("Bureau"), arguing that he suffered discrimination due to his vaccination status, in violation of the recently enacted Montana state law

1

H.B. 702. H.B. 702 provides that it is an "unlawful discriminatory practice" for "a person or a governmental entity to refuse, withhold from, or deny to a person any local or state services, goods, facilities, advantages, privileges, licensing, educational opportunities, health care access, or employment opportunities based on the person's vaccination status or whether the person has an immunity passport." H.B. 702, 67th Leg., Reg. Sess. (Mont. 2021) (codified at Mont. Code Ann. § 49-2-312 (2021) ("MCA § 49-2-312"). The Bureau purportedly agreed, finding that the Port Authority had illegally discriminated against Mr. Myers under MCA § 49-2-312.

The Port Authority filed suit in this Court against the Bureau and its Commissioner, Laurie Esau. The Port Authority seeks, *inter alia*, a declaratory judgment that the Bureau lacks jurisdiction to enforce MCA § 49-2-312 within the Blackfeet Reservation, and preliminary and permanent injunctions against defendants from enforcing MCA § 49-2-312 against the Port Authority. The Blackfeet Nation seeks to intervene in this matter as a plaintiff due to its interest in defending its Treaty-protected jurisdiction against interference by state regulation.

## II. ARGUMENT

### A. The Blackfeet Nation Meets the Requirements for Intervention as a Matter of Right.

Intervention is governed by Federal Rule of Civil Procedure Rule 24(a)(2), which provides in relevant part:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Under Rule 24(a), an applicant must establish that: (1) its motion is timely; (2) it has a "significantly protectable" interest in the litigation; (3) without intervention an adverse ruling may impair or impede the ability to protect that interest; and (4) its interest is not being adequately represented by the existing parties. *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (citations omitted); *see Mont. Wildlife Fed'n v. Bernhardt*, No. CV-18-69-GF-BMM, 2022 WL 2438963, at *2 (D. Mont. July 5, 2022).

"Rule 24(a) traditionally receives liberal construction in favor of applicants for intervention." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (citing *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). Moreover, in evaluating whether Rule 24(a)'s requirements are met, courts "are guided primarily by practical and equitable considerations." *Donnelly*, 159 F.3d at 409. In this respect, the Ninth Circuit frequently notes that:

> A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a *practical* interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at

3

the same time, we allow an additional interested party to express its
views before the court.

*United States v. City of L.A.*, 288 F.3d 391, 397-98 (9th Cir. 2002) (quoting *Forest
Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1995))
(internal quotations omitted and emphasis in original).

### 1. The Blackfeet Nation's Motion for Intervention is Timely.

The Blackfeet Nation's motion is timely. Timeliness is determined by three
factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2)
the prejudice to other parties; and (3) the reason for and length of the delay." *Cnty.
of Orange v. Air Cal.,* 799 F.2d 535, 537 (9th Cir.1986) (citing *United States v.
Oregon*, 745 F.2d 550, 552 (9th Cir. 1984).

In analyzing the "stage of the proceeding" factor, the court may consider the
time elapsed since the proceeding's initiation, how much activity has yet occurred
in the case, and whether the district court has issued substantive rulings in the case.
*See Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016); *Smith v.
Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999) (finding a motion to intervene filed
twenty-seven months after the original complaint was filed untimely because the
"case had progressed substantially" and the district court had already issued several
pre-trial orders); *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893,
897 (9th Cir. 2011) (finding that a motion to intervene filed less than three months

after the complaint was filed and less than two weeks after the answer was filed was timely as it was in an "early stage of the proceedings").

Here, the Port Authority filed its original complaint on August 30, 2022, and an amended complaint and motion for preliminary injunction ("PI") and temporary restraining order ("TRO") on October 19, 2022; Defendants filed a motion to dismiss for failure to state a claim in lieu of an answer and their response to the motion for PI and TRO on October 20, 2022. The Blackfeet Nation's motion to intervene falls well within the range the Ninth Circuit has deemed timely. The Court has not yet made any substantive rulings, only setting the date for a hearing on Plaintiff's motion for PI and TRO. Thus, the case has not "progressed substantially" to a point where the Nation is too late to intervene.

The parties will not suffer any prejudice if intervention is granted. Parties are prejudiced by intervention if it will "inject new issues into the litigation," *Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007) (quoting *United States v. Alisal Water Corporation*, 370 F.3d 915, 922 (9th Cir. 2004), and "would complicate the issues and prolong the litigation." *United States v. Washington*, 86 F.3d 1499, 1504 (9th Cir. 1996). Here, the Blackfeet Nation seeks to address an issue that is already before the Court, and thus, there is no unreasonable delay or complication that its intervention could cause, especially because the proceedings are still at a very early stage.

The third factor is not relevant here due to the absence of any delay. *See Cummings v. United States*, 704 F.2d 437, 441 (9th Cir. 1983). "A party seeking to intervene must act as soon as he 'knows or has reason to know that his interests might be adversely affected by the outcome of the litigation.'" *United States v. Oregon*, 913 F.2d 576, 589 (9th Cir. 1990) (quoting *United States v. City of Chicago*, 870 F.2d 1256, 1263 (7th Cir. 1989). Here, there is no delay as the Blackfeet Nation acted just two months after the filing of the original complaint and before any substantive proceedings to intervene.

## 2. The Blackfeet Nation Has a Significantly Protectable Interest in the Present Litigation and an Adverse Ruling Would Impair its Ability to Protect that Interest.

The Blackfeet Nation has a significantly protectable interest in this case. "Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry. No specific legal or equitable interest need be established." *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993) (citing *Portland Audubon Soc'y v. Hodel*, 866 F.2d 302, 308 (9th Cir. 1989)). Instead, the interest test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *City of L.A.*, 288 F.3d at 398 (quoting *Cnty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (internal quotations omitted).

In order to establish a protectable interest sufficient to intervene as of right, applicants must show: "(1) that the interest asserted is protectable under some law, and (2) that there is a relationship between the legally protected interest and the claims at issue." *Forest Conservation Council*, 66 F.3d at 1494 (quoting *Sierra Club v. U.S. Env't Prot. Agency*, 995 F.2d 1478, 1484 (9th Cir. 1993)) (alterations and internal quotations omitted). The relationship requirement is met "if the resolution of the plaintiffs' claims actually will affect the applicant." *Donnelly*, 159 F.3d at 410.

The Ninth Circuit, among other courts, has recognized that a sovereign entity's interest in maintaining its jurisdictional and regulatory powers is a significantly protectable interest. *See, e.g.*, *Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States*, 921 F.2d 924 (9th Cir. 1990); *Miami Tribe of Okla. v. Walden*, 206 F.R.D. 238, 242 (S.D. Ill. 2001) ("A governmental body's sovereign interest is the type of direct, significant and legally protectable interest that could justify intervention under Rule 24(a)(2)."); *Sierra Club v. City of San Antonio*, 115 F.3d 311, 315 (5th Cir. 1997) (finding that the state of Texas's sovereign interest in implementing its laws was a significantly protectable interest).

For example, in *Scotts Valley Band of Pomo Indians*, the Ninth Circuit ordered the district court to grant a motion to intervene as of right by the City of Chico, California in a matter in which the Scotts Valley Band of Pomo Indians and individual Indians ("Indian Bands") sought to restore parcels of real property in the

city to federal trust status. 921 F.2d at 925–26. The city argued that its protectable interest was its taxing and regulatory powers over the disputed parcels, which it would lose if the parcels were restored to trust status. *Id.* at 927. In holding that this was a significantly protectable interest, the court held, "Municipal governments perform essential tasks in regulating property within their borders. If the Chico Rancheria is removed from municipal jurisdiction, as the Indian Bands' action seeks, the City will lose tax revenue and the remaining city property may, as a practical matter, be affected by the City's inability to enforce land-use and health regulations." *Id.* at 927–28.

The Ninth Circuit's conclusion in *Scotts Valley of Pomo Indians* that a municipality's governmental interests are enough to constitute a significantly protectable interest makes it certain here that the Blackfeet Nation has a significantly protectable interest. The Nation's is a sovereign interest in defending against improper jurisdictional encroachment by the State of Montana. The Ninth Circuit has recognized, "Tribes retain considerable control over nonmember conduct on tribal land[,]" as is the case here. *Wilson v. Horton's Towing*, 906 F.3d 773, 778 (9th Cir. 2018) (quoting *Strate v. A-1 Contractors*, 520 U.S. 438, 454 (1997)). Tribes possess the right to exercise jurisdiction over nonmember conduct on tribal land pursuant to treaties, statutes, and as a function of their inherent sovereignty. *Id.* The Nation has a particularized and significant interest in defending its exclusive

jurisdiction pursuant to the right to exclude under Article 4 of the Treaty of 1855. Treaty with the Blackfoot Indians, art. 4, 11 Stat at 657 (1855). The Nation's sovereign interests would be significantly impaired if the State of Montana is able to enforce MCA § 49-2-312 on Blackfeet lands, contrary to Article 4 of the Treaty. *C.f. Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*, 951 F.3d 1142, 1152 (9th Cir. 2020) (When tribal jurisdiction "conflicts with a state or local law, the state or local law simply must give way."). The exact question being considered in this case, whether the State of Montana has jurisdiction to enforce MCA § 49-2-312 on Blackfeet lands, makes the Nation's interest significantly protectable and justifies intervention.

### 3. The Existing Parties Do Not Adequately Represent the Blackfeet Nation's Interests.

In assessing the adequacy of representation, a court considers three factors: (1) whether the interests of an existing party are such that it will undoubtedly make all of the intervenor's arguments; (2) whether the present party is able and willing to make such arguments; and (3) whether the intervenor would offer any necessary element to the proceedings that the other parties might neglect. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (citations omitted). The burden of showing that existing parties may not adequately represent a party's interests "is *minimal* and is satisfied if the applicant can demonstrate that representation of its interests '*may be*' inadequate." *Helena Hunters & Anglers Ass'n*

*v. Marten*, No. CV 19-17-M-DLC, 2019 WL 3973707, at * 2 (D. Mont. Aug. 22, 2019) (quoting *Arakaki*, 324 F.3d at 1086) (emphasis added). Any doubt regarding the adequacy of representation should be resolved in favor of the applicant. *See* 6 Daniel R. Coquillette et al., *Moore's Federal Practice* § 24.03[4][a][i] at 24-47 (3d ed. 1997) (citing *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993)).

The Port Authority's interest in the resolution of its claim is fundamentally different from that of the Blackfeet Nation. As a threshold matter, the Nation is a sovereign, federally recognized Indian tribe and has an interest in defending its sovereignty and exercise of jurisdiction over all within its borders. Its interest in this case is to defend the integrity of that jurisdiction against an unlawful attempt by Defendants to enforce state law on Blackfeet lands within the boundaries of its reservation. This unique interest resides with the Nation alone. Given the fundamental tribal sovereignty interests at stake, the Port Authority is incapable of making all the arguments that would be set forth by the Nation. *See Ctr. for Biological Diversity v. U.S. Forest Serv.*, No. CV 22-91-M-DLC-KLD, 2022 WL 3910743, at *1 (D. Mont. Aug. 31, 2022) ("Finally, the Tribe has shown that the existing parties' representation of the Tribe's protectable interest may be inadequate because the existing parties do not share the sovereign interests of an Indian Tribe."). The Nation enjoys unique government-to-government relationships with the State of

Montana and the United States, governed by treaties as well as tribal, state, and federal constitutional provisions and laws. These are all necessary elements that the Port Authority cannot address as the sovereign interests at stake are those of the Nation.

### B. Alternatively, the Blackfeet Nation Meets the Requirements for Permissive Intervention.

In the event this Court finds that the Blackfeet Nation has not established the requirements for intervention as of right, the Nation alternatively requests that this Court grant permissive intervention. "Upon timely application anyone may be permitted to intervene in an action when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the [rights of the parties]." *Id.*; *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472 (9th Cir. 1972); 7C Charles A. Wright et al., *Wright, Miller & Kane*, § 1913, at 379.

The Blackfeet Nation seeks to intervene in this case for the purpose of addressing the Port Authority's claim against Defendants, thus ensuring this Court does not have to address the same issue twice in successive cases. Under these circumstances, Rule 24(b)'s common question requirement is met. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002) (although permissive intervention should be denied if the applicant raises no questions in

11

common with those in the main action, "if there is a common question of law and fact, the requirement of the rule has been satisfied and it is then discretionary with the court whether to allow intervention.").

The second half of the permissive intervention test looks to timeliness and prejudice to the parties. As stated above, the Blackfeet Nation's motion is timely, there is no prejudice to the existing parties, and the Nation brings a perspective to the litigation distinct from that of the other parties on the common questions of law and fact.

## CONCLUSION

For the reasons stated above, the Blackfeet Nation respectfully requests that its *Rule 24 Motion to Intervene* be granted.

RESPECTFULLY SUBMITTED this 31st day of October, 2022.

Wesley James Furlong (MT Bar No. 42771409)
NATIVE AMERICAN RIGHTS FUND

Mark J. Carter (*pro hac vice* forthcoming)
NATIVE AMERICAN RIGHTS FUND
950 F Street NW
Suite 1050
Washington, DC 20004
Phone: (202) 785-4166
Fax: (202) 822-0068
mark.carter@narf.org

Jason Searle (*pro hac vice* pending)
Matthew L. Campbell (*pro hac vice* forthcoming)
NATIVE AMERICAN RIGHTS FUND
1506 Broadway
Boulder, CO 80302
Phone: (303) 447-8760
Fax: (303) 443-7776
searle@narf.org
mcampbell@narf.org


*Counsel for Proposed Intervenor-Plaintiff*
*Blackfeet Nation*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 1.5 and 7.1(d), I hereby certify the foregoing **PROPOSED INTERVENORS-PLAINTIFF' BRIEF IN SUPPORT OF RULE 24 MOTION TO INTERVENE** complies with:

(1) the type-volume limitations of Local Civil Rule 7.1(d)(2) because it contains 2,805 words, excluding the items excluded by Local Civil Rule 7.1(d)(2); and

(2) the typeface requirements of Local Civil Rule 1.5 because it has been prepared in a proportionally spaced typeface suing Microsoft Word, in 14-point Times New Roman font.

Wesley James Furlong (MT Bar No. 42771409)
NATIVE AMERICAN RIGHTS FUND

## CERTIFICATE OF SERVICE

Pursuant to Local Civil Rule 24.1(a), I hereby certify that on this 31st day of October, 2022, I filed the foregoing **PROPOSED INTERVENOR-PLAINTIFF'S BRIEF IN SUPPORT OF RULE 24 MOTION TO INTERVENE** with the Clerk of the Court for the United States District Court for the District of Montana and served it upon all participants in this case by U.S. Mail to the following address:

Attn: Clerk of the Court
U.S. District Court
125 Central Avenue West
Great Falls, MT 49404

Glacier County Regional Port Authority
Attn: Terryl T. Matt
Joseph F. Sherwood
310 Main Street
Cut Bank, MT 59427

Glacier County Regional Port Authority
Attn: Kirk D. Evenson
P.O. Box 1525
Great Falls, MT 59403

Laurie Esau
Attn: Lindsey R. Simon
P.O. Box 201440
Helena, MT 59620

Montana Human Rights Bureau
Attn: Lindsey R. Simon
P.O. Box 201440
Helena, MT 59620

Wesley James Furlong (MT Bar No. 42771409)
NATIVE AMERICAN RIGHTS FUND

15