**MATT LAW OFFICE, PLLC**
**Terryl T. Matt, Esq.**
**Joseph F. Sherwood, Esq.**
310 East Main Street
Cut Bank, MT  59427
Telephone:  (406) 873-4833
Fax No.:     (406) 873-0744
terrylm@mattlawoffice.com
joes@mattlawoffice.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA, GREAT FALLS DIVISION

| | |
|---|---|
| GLACIER COUNTY REGIONAL PORT AUTHORITY,<br><br>    Plaintiff,<br><br>vs.<br><br>LAURIE ESAU, MONTANA HUMAN RIGHTS BUREAU,<br><br>    Defendants. | Case No. CV-22-81-GF-BMM-JTJ<br><br>**REPLY IN SUPPORT OF RENEWED RULE 65 MOTION FOR PRELIMINARY INJUCNTION AND TEMPORY RESTRAINING ORDER** |

COMES NOW, Glacier County Port Authority ("Port Authority"), by and through its counsel of record, Terryl T. Matt, and hereby files its *Reply in Support of Renewed Rule 65 Motion for Preliminary Injunction and Temporary Restraining Order*.

1

ARGUMENT

**I. The Second Amended Complaint is the operative document.**

F. R. Civ. P. 15(a)(1) allows a plaintiff to amend its complaint "once as a matter of course" within 21 days after the complaint is served or "21 days after service of a responsible pleading or Rule 12(b), (e), or (f) motion is served, "whichever is earlier." The rule further instructs courts to "freely give leave" to further amendments "when justice so requires."  F. R. Civ. P. 15(a)(2).  *See also United States v. Gila Valley Irrigation Dist.*, 859 F.3d 789 (9th Cir. 2017) (Rule 15 "embodies a liberal policy in favor of allowing pleading amendments at any time during and even after trial.").

Before any Defendants were served or filed a responsive pleading in the case, the Port Authority amended its original complaint to name the Montana Human Rights Bureau instead of the Montana Human Rights Commission and then to add relevant provisions of Montana law to its existing claims.  Only after these amendments did Defendants file their motion to dismiss.  Defendants have not and cannot claim these amendments have caused undue prejudice, or that the Port Authority has acted in bad faith or caused undue delay as a result of the amendments.

**II. The Port Authority can show a likelihood of success on the merits.**

    **A. Concurrent jurisdiction does not and cannot exist in this instance because Tribal Ordinance 121 conflicts with § 49-2-212, MCA.**

Defendants assert the Port Authority cannot show a likelihood of success on the merits because Tribal Ordinance 121, as amended, does not impose a general COVID-19 vaccine mandate for non-Indians entering and gathering on the Blackfeet Reservation. Section 6 of the Sixth Amendment to the COVID-19 Ordinance 121, provides:

> **Section 6. COVID-19 Vaccination.**  The Blackfeet Tribal Business Council designates the Public Health Officer through South Piegan Health Center to administer vaccinations for COVID-19, on the Blackfeet Reservation in cooperation with the Indian Health Services. Vaccination policies *shall include a minimum of the following . . .* B. Mandatory vaccination with exceptions . . . .

Port Authority Executive Director Brenda Schilling states her affidavit that required masks and proof of vaccination were in line with her understanding of Blackfeet tribal laws and ordinances governing the Port Authority's meeting location at Blackfeet Community College at the time.  (Aff. Brenda Schilling, ¶ 6).  Ms. Schilling's understanding derives from and is consistent with the notices posted at Blackfeet Community College implementing the Sixth Amendment to the COVID-19 Ordinance 121, a true and correct copy of which is attached hereto as **Exhibit A**.

Defendants seek to have this Court deviate from the general rule that unless a specific federal law states otherwise, Congress's plenary and exclusive authority over Indian tribes and principles of tribal sovereignty preempt state law application to activities occurring on tribal lands.  *See Montana v. Blackfeet Tribe*, 471 U.S. 759, 765 (1985) (citations omitted) ("The Constitution vests the Federal Government with

3

exclusive authority over relations with Indian Tribes . . . .). *See also Williams v. Lee*, 358 U.S. 217 (1959) ("[A]bsent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them.").

These principles of tribal sovereignty persist even where non-Indian parties are concerned. The United States Supreme Court has held that to the extent a state can claim any interest in regulating non-Indian activity on tribal land, the state is only allowed to enforce its interest "up to the point where tribal self-government would be affected." *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 179 (1973) (citations omitted). Once the tribe's ability to self-govern is infringed, the tribe is authorized to regulate "certain forms of nonmember behavior" that "sufficiently affect the tribe as to justify tribal oversight." *See United States v. Cooley*, ____ U.S. ____, 101 S. Ct. 1638, 1645 (2021).

Known as one of two exceptions articulated in *Montana v. United States*, 450 U.S. 544, 566, 101 S. Ct. 1245, 1258 (1981), and recently reaffirmed in *Cooley*, the tribal "health and welfare" exception provides that a tribe has the inherent civil authority to regulate non-Indian activity to protect the health or welfare of the tribe. 141 S. Ct. at 1643.

This case fits within the *Montana* "health or welfare" exception. The Blackfeet Nation enacted Tribal Ordinance 121 to protect the health and safety of the Tribe during

4

the COVID-19 pandemic.  The Port Authority was required to follow this ordinance, not § 49-2-312, MCA, when meeting on the Blackfeet Reservation because the Tribe's authority to regulate the spread of COVID-19 on the Blackfeet Reservation overrides any interest Defendants can claim in enforcing § 49-2-312, MCA, an anti-discrimination statute, on tribal land.

Defendants further assert the Port Authority was not required to hold its meeting on tribal land or enforce the Tribe's ordinances.  To suggest that the Port Authority should not require its members to follow tribal ordinances and laws when meeting on tribal land is, in itself, a problematic position that undermines tribal sovereign authority.  Furthermore, as shown by Ms. Schilling's affidavit, the Port Authority's company membership is composed of individuals who reside on and off the Blackfeet Reservation. (Aff. Schilling, ¶ 8).  Holding board meetings off the Reservation solely due to the new Montana law would be inherently unfair to those members residing on the Reservation and negatively impacts the work the Port Authority seeks to undertake on behalf of all who reside in Glacier County. (Aff. Schilling, ¶ 8).

  **B. The State cannot claim an overriding interest enforcing § 49-2-212, MCA, on tribal land**.

Defendants also assert the Port Authority can show no likelihood of success on the merits because Defendants have a legitimate and compelling state interest in enforcing anti-discrimination laws against non-tribal entities within Indian Country.  In making

5

this claim, Defendants ignore the disparate impact COVID-19 has had on Indian tribes, which has been expressly recognized by other State of Montana branches. *See Leading Causes of Death among American Indian Residents of Montana, 2020 and 2015-2019*. Even if Defendants could lawfully exercise jurisdiction over the Port Authority's tribal activities in this situation, its interest in enforcing § 49-2-212, MCA, cannot override the Blackfeet Nation's attempts to protect its tribal members from unvaccinated individuals gathering on tribal lands. *See McClanahan*, 411 U.S. at 179; *Cooley*, 141 S. Ct. at 1643.

## CONCLUSION

Defendants' newly raised arguments have provided no basis for this Court to deny the Port Authority's request for a preliminary injunction and temporary restraining order enjoining Defendants' further enforcement of § 49-2-212, MCA, against the Port Authority on tribal lands.

The Port Authority respectfully requests this Court grant the Port Authority's renewed request for a preliminary injunction and temporary restraining order until the merits of the case can be resolved.

DATED this 14th day of November, 2022           MATT LAW OFFICE, PLLC

                                                By: /s/ Terryl T. Matt Law
                                                Terryl T. Matt

                                                Attorneys for Plaintiff,
                                                Glacier County Regional Port Authority

6

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of November 2022, a true copy of the foregoing was served:

Via ECF to the following parties:

Lindsey R Simon
Agency Counsel
Montana Department of Labor and Industry
PO Box 1728
Helena, MT. 59624-1728
lindsey.simon2@mt.gov

Wesley James Furlong
Native American Rights Fund
745 West 4th Ave, Suite 502
Anchorage, AK 99501
wfurlong@narf.org

By: /s/ Terryl T. Matt
Matt Law Office

7