# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| GLACIER COUNTY REGIONAL PORT AUTHORITY,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>LAURIE ESAU, MONTANA HUMAN RIGHTS BUREAU,<br><br>　　　　　Defendants. | CV-22-81-GF-BMM-JTJ<br><br>**ORDER GRANTING INTERVENOR-PLAINTIFF'S MOTION TO INTERVENE** |

　　　　The Blackfeet Nation of the Blackfeet Indian Reservation ("Blackfeet Nation"), a federally recognized tribe, has moved to intervene as of right pursuant to Federal Rule of Civil Procedure ("FRCP") 24(a), or in the alternative, permissively under FRCP 24(b). (Doc. 32.) Plaintiff Glacier County Regional Port Authority ("Port Authority") does not oppose the motion. (Doc. 32 at 2.) Defendants Laurie Esau and Montana Human Rights Bureau ("Bureau") do not oppose the intervention. (Doc. 35.)

1

## BACKGROUND

Plaintiff Port Authority filed suit against Laurie Esau and the Bureau (collectively "Defendants") seeking declaratory and injunctive relief. (Doc. 16.) The Port Authority held board meetings before the COVID-19 pandemic, alternatively, in Browning, Montana, within the Blackfeet Indian Reservation at the Browning Community College, and in Cut Bank, Montana. (Doc. 16 at 3.) The Port Authority was established by a joint resolution of Glacier County, City of Cut Bank, and Community of Browning. It provides quasi-governmental services to provide support to develop and retain businesses within the region. Nine appointed board members govern the Port Authority. The appointed board member serve staggered four-year terms, after which the members of the board are elected.

The Port Authority moved these meetings off the Blackfeet Indian Reservation to Cut Bank during the height of the COVID-19 pandemic. (Doc. 16 at 3.) The Port Authority held its first meeting back in Browning in November 2021. (Doc. 16 at 3.) Board meetings are open to the public.

The Port Authority asserts that the Montana legislature passed a new state law, H.B. 702, codified at § 49-2-312, MCA, during the 2021 legislative session that prohibits discrimination based on a person's COVID-19 vaccination status for employment or public accommodation. (Doc. 16 at 3.) H.B. 702 provides that it is an "unlawful discriminatory practice" for "a person or a governmental entity to

refuse, withhold from, or deny to a person any local or state services, goods, facilities, advantages, privileges, licensing, educational opportunities, health care access, or employment opportunities based on the person's vaccination status or whether the person has an immunity passport." H.B. 702, 67th Leg., Reg. Sess. (Mont. 2021) (codified at Mont. Code Ann.§ 49-2-312 (2021) ("MCA § 49-2-312"). The Port Authority alleges that the Blackfeet Tribal Business Council's Tribal Ordinance 121 was in effect at the time MCA § 49-2-312 became effective. (Doc. 16 at 4.) Tribal Ordinance 121 authorizes the Blackfeet Nation to require mandatory vaccination against COVID-19 for persons attending meetings in-person on the Blackfeet Indian Reservation. (Doc. 16 at 4.)

The Port Authority alleges that a non-Indian member of the public, J.R. Myers, attempted to appear in-person at the November 2021 Port Authority board meeting in Browning within the exterior boundaries of the Blackfeet Indian Reservation. (Doc. 16 at 4.) Mr. Myers was not vaccinated against COVID-19. (Doc. 16 at 4.) Mr. Myers filed a complaint against the Port Authority with the Bureau, claiming discrimination based on vaccination status. (Doc. 16 at 4.) The Bureau determined the Port Authority illegally had discriminated against Mr. Myers when it required in-person attendees to show proof of vaccination. (Doc. 16 at 4.) A contested case proceeding has been set before the Montana Department of

Labor and Industry's Office of Administrative Hearings. The hearing is set for March 21-23, 2023. (Doc. 16 at 5.)

The Port Authority filed suit in this Court against the Bureau and its Commissioner, Laurie Esau, in August 2022. (Doc. 1.) The Port Authority seeks, *inter alia,* a declaratory judgment that the Bureau lacks jurisdiction to enforce MCA § 49-2-312 within the Blackfeet Indian Reservation, and preliminary and permanent injunctions against Defendants from enforcing MCA § 49-2-312 against the Port Authority. (Doc. 19.)

The Port Authority filed a Motion for Preliminary Injunction on September 9, 2022 (Doc. 7) and renewed its motion on October 19, 2022 (Doc. 19) after filing a Second Amended Complaint. (Doc. 16). Defendants filed a Motion to Dismiss on October 20, 2022. (Doc. 23). The Blackfeet Nation seeks to intervene in this matter as a plaintiff due to its interest as a sovereign entity in defending its Treaty-protected jurisdiction against state regulatory interference. (Doc. 32.)

## DISCUSSION

**I.  The Blackfeet Nation meets the requirements for intervention as a matter of right.**

Federal Rule of Civil Procedure Rule 24 controls intervention. FRCP 24 states as follows:

(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:

4

      (1) is given an unconditional right to intervene by a federal statute; or

      (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

  (b) Permissive Intervention.

      (1) In General. On timely motion, the court may permit anyone to intervene who:

         (A) is given a conditional right to intervene by a federal statute; or

         (B) has a claim or defense that shares with the main action a common question of law or fact

***

      (2) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Rule 24(a) requires a movant to demonstrate that: "(1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th 2011). Courts generally construe FRCP 24(a) liberally in favor of intervention and are "guided primarily by practical considerations and equitable considerations." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

## 1. The Blackfeet Nation's motion for intervention is timely.

The Blackfeet Nation's motion is timely. Three factors determine timeliness: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay. *Cnty. of Orange v. Air Cal.*, 799 F.2d 535, 537 (9th Cir. 1986). A court may consider the time elapsed since the proceeding's initiation, how much activity has yet occurred in the case, and whether the district court has issued substantive rulings in the case when analyzing the "stage of the proceeding" factor. *See Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016); *Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999). The Ninth Circuit deemed as timely a motion to intervene filed less than three months after the complaint was filed and less than two weeks after the answer as it was in an "early stage of the proceeding*s*." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).

The Port Authority filed its original Complaint on August 30, 2022, (Doc. 1) and its Second Amended Complaint and Motion for Preliminary Injunction ("PI") and Temporary Restraining Order ("TRO") on October 19, 2022. (Docs. 16 & 19). Defendants filed a Motion to Dismiss in lieu of an answer (Doc. 23) and a Response to the Motion for PI and TRO on October 20, 2022 (Doc. 25) and another Response to Plaintiff's renewed Motion for PI and TRO. (Doc. 34.) The Blackfeet Nation's Motion to Intervene (Doc.

6

32) filed on November 2, 2022, falls within the range deemed timely by the Ninth Circuit. The Court has not yet made any substantive rulings. The Court set a date for a hearing on Plaintiff's Motion for PI and TRO (Doc. 26.), but the hearing was vacated. (Doc. 31.) This case has not "progressed substantially" to a point where the Blackfeet Nation is too late to intervene.

The parties will not suffer prejudice if intervention is granted. Parties are prejudiced by intervention if it will "inject new issues into the litigation," *Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007), and "would complicate the issues and prolong the litigation." *United States v. Washington*, 86 F.3d 1499, 1504 (9th Cir. 1996). The Blackfeet Nation seeks to address an issue already before the Court. Intervention would not cause unreasonable delay or complication.

Regarding the third factor, a party seeking to intervene must act as soon as it knows or has reason to know that its interests might be adversely affected by the outcome of the litigation. *United States v. Oregon*, 913 F.2d 576, 589 (9th Cir. 1990) (quoting *United States v. City of Chicago*, 870 F.2d 1256, 1263 (7th Cir. 1989). The Blackfeet Nation moved to intervene two months after Port Authority filed its Complaint and before any substantive proceedings have taken place. The Blackfeet Nation's intervention has not caused unreasonable delay.

7

The Court has no reason to believe that Blackfeet Nation did not act as soon as it knew or had reason to know that its interests might be adversely affected by the Port Authority's action. *See Cummings v. United States*, 704 F.2d 437, 441 (9th Cir. 1983).

### 2. The Blackfeet Nation has a significant interest in the present litigation and an adverse ruling may impair its ability to protect that interest.

The Blackfeet Nation possesses a significantly protectable interest in this case. Whether an applicant for intervention demonstrates sufficient interest in an action presents a practical, threshold inquiry. *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002). The interest test serves "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *City of Los Angeles*, 288 F.3d at 398 (quoting *Cnty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980). No specific legal or equitable interest need be established. *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993).

Applicants must make the following showing: (1) that the interest asserted is protectable under some law, and (2) that a relationship exists between the legally protected interest and the claims at issue to establish a protectable interest sufficient to intervene as of right. *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1494 (1995). The applicant meets

8

the relationship requirement "if the resolution of the plaintiff's claims actually will affect the applicant." *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998). The Ninth Circuit has recognized that a sovereign entity's interest in maintaining its jurisdictional and regulatory powers represents a significantly protectable interest. *See, e.g., Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States*, 921 F.2d 924 (9th Cir. 1990). In *Scotts Valley Band of Pomo Indians*, the Ninth Circuit ordered the district court to grant a motion to intervene as of right by the City of Chico, California in a matter in which the Scotts Valley Band of Pomo Indians and individual Indians ("Indian Bands") sought to restore parcels of real property in the city to federal trust status. 921 F.2d at 925–26. The city argued that its protectable interest was its taxing and regulatory powers over the disputed parcels, which it would lose if the parcels were restored to trust status. *Id.* at 927. The city held a protectable interest because "[m]unicipal governments perform essential tasks in regulating property within their borders." *Id.* at 927–28. "If the Chico Rancheria is removed from municipal jurisdiction as the Indian Bands' action seeks," the court determined, "then the City will lose tax revenue and the remaining city property may, as a practical matter, be affected by the City's inability to enforce land-use and health regulations." *Id.*

The Blackfeet Nation possesses a protectable interest in defending

against alleged improper jurisdictional encroachment by the State of Montana. The Ninth Circuit has recognized that "[t]ribes retain considerable control over nonmember conduct on tribal land." *Wilson v. Horton's Towing*, 906 F.3d 773, 778 (9th Cir. 2018) (quoting *Strate v. A-1 Contractors*, 520 U.S. 438, 454 (1997)). Tribes generally possess the right to exercise jurisdiction over nonmember conduct on tribal land pursuant to treaties, statutes, and as a function of their inherent sovereignty. *Id*. The Blackfeet Nation has a particularized and significant interest in defending its jurisdiction pursuant to the right to exclude under Article 4 of the Treaty of 1855. The question presented in this case, whether the State of Montana has jurisdiction to enforce MCA § 49-2-312 on Blackfeet lands, makes the Blackfeet Nation's interest protectable.

### 3. The existing parties do not adequately represent the Blackfeet Nation's interests.

A court considers three factors when assessing whether existing parties to the action adequately represent the applicant's interests: (1) whether the interests of an existing party are such that it will undoubtedly make all of the intervenor's arguments; (2) whether the present party is able and willing to make such arguments; and (3) whether the intervenor would offer any necessary element to the proceedings that the other parties might neglect. *Sw.*

*Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001). The burden to demonstrate that existing parties may not adequately represent a party's interests "is minimal and is satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Helena Hunters & Anglers Ass'n v. Marten*, No. CV 19-17-M-DLC, 2019 WL 3973707, at *2 (D. Mont. Aug. 22, 2019).

The Port Authority's interest here differs fundamentally from that of the Blackfeet Nation. As a threshold matter, the Blackfeet Nation is a sovereign, federally recognized Indian tribe and has an interest in defending its sovereignty and exercise of jurisdiction within its borders. Its interest in this case is to maintain the integrity of that jurisdiction against the alleged unlawful attempt by Defendants to enforce state law on Blackfeet lands within the boundaries of its reservation. The Port Authority is incapable of making all the arguments that would be set forth by the Blackfeet Nation given the fundamental tribal sovereignty interests at stake. *See Ctr. for Biological Diversity v. US. Forest Serv.*, No. CV 22-91-M-DLC-KLD, 2022 WL 3910743, at *1 (D. Mont. Aug. 31, 2022). The Blackfeet Nation has demonstrated that the existing parties' representation of its protectable interest may be inadequate because the existing parties do not share the

sovereign interests of an Indian Tribe. *Id*. The Nation enjoys unique government-to-government relationships with the State of Montana and the United States, governed by treaties as well as tribal, state, and federal constitutional provisions and laws. The Port Authority cannot address the Blackfeet Nation's sovereign interests at stake. These unique interests reside with the Blackfeet Nation alone.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** Blackfeet Nation's Motion to Intervene (Doc. 32) is **GRANTED**.

DATED this 15th day of November, 2022.

_____
Brian Morris, Chief District Judge
United States District Court