Wesley James Furlong (MT Bar No. 42771409)
NATIVE AMERICAN RIGHTS FUND
745 West 4th Avenue, Suite 502
Anchorage, AK 99501
Phone: (907) 276-0680
Fax: (907) 276-2466
wfurlong@narf.org

*Counsel for Intervenor-Plaintiff Blackfeet Nation*
*Additional Counsel Listed on Signature Page*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| GLACIER COUNTY REGIONAL PORT AUTHORITY,<br><br>Plaintiff,<br><br>BLACKFEET NATION,<br><br>Intervenor-Plaintiff,<br><br>v.<br><br>LAURIE ESAU and MONTANA HUMAN RIGHTS BUREAU,<br><br>Defendants. | Case No. 4:22-cv-00081-BMM<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Chief District Judge Brian M. Morris |

## AUTHORITY

1.      This action is brought by Intervenor-Plaintiff Blackfeet Nation pursuant to Article 4 of its Treaty of 1855 with the United States of America, which provides that the Nation "shall exercise exclusive control" within its territorial boundaries. Treaty with the Blackfeet, art. 4, 11 Stat 657 (1855) ("Treaty of 1855"). Sovereigns

1

have a significantly protectable interest in defending their jurisdictional and regulatory powers. *See Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States*, 921 F.2d 924 (9th Cir. 1990). This action thus is authorized by the Treaty of 1855 as a measure to defend the Nation's treaty-protected right to exclude from encroachment by the State of Montana's attempts to enforce its laws within the Blackfeet Indian Reservation.

## JURISDICTION AND VENUE

2.     This case arises under the Constitution and laws of the United States, and therefore this Court has jurisdiction pursuant to 28 U.S.C. § 1331. This case further arises due to Defendants' encroachment on the Blackfeet Nation's treaty rights, vesting the Court with jurisdiction pursuant to 28 U.S.C. § 1362. The Nation has suffered and will continue to suffer injury of encroachment on its sovereign authority because of the actions of Defendants, and this Court may issue declaratory and injunctive relief to remedy those injuries. 28 U.S.C. §§ 2201, 2202. Therefore, jurisdiction is also established under Article III of the United States Constitution.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because this action is predicated upon a federal question and a substantial part of the events or omissions giving rise to the claims alleged herein occurred, and will continue to occur, in this District.

## PARTIES

4.      Intervenor-Plaintiff BLACKFEET NATION is a federally recognized Indian tribe with 17,321 enrolled members, approximately 7,000 of which live on the Blackfeet reservation. The reservation is located in northern Montana and covers approximately 1.5 million acres. The reservation is intersected by Glacier and Pondera Counties. The Nation asserts special solicitude standing[1] based on injuries to its sovereign authority and *parens patriae* standing on behalf of its members.

5.      Defendant LAURIE ESAU is the Commissioner of the Montana Department of Labor and Industry (the "Department"), an administrative agency of the State of Montana. Defendant Esau is charged with the enforcement of Montana H.B. 702 through the Department's Montana Human Rights Bureau ("Bureau"). Defendant Esau is sued in her official capacity.

6.      Defendant MONTANA HUMAN RIGHTS BUREAU is a governmental agency of the State of Montana.

## STATEMENT OF FACTS

7.      On October 17, 1855, the Blackfeet Nation, among other Tribal Nations in the Rocky Mountain region, entered into a treaty with the United States to establish "[p]eace, friendship and amity" and to define the contours of the signatory sovereigns' government-to-government relationship going forward. Treaty of 1855

---

[1] *Mashantucket Pequot Tribe v. Town of Ledyard*, 722 F.3d 457, 463 (2d Cir. 2013) (quoting *Massachusetts v. EPA*, 549 U.S. 497, 520 (2007)).

at art. 1. The Treaty of 1855 established reservations for the respective Tribal Nations, in whose boundaries the United States promised they "shall exercise exclusive control." *Id.* art. 4.

8.     On February 22, 1889, Congress admitted the State of Montana into the Union. Enabling Act of 1889, 25 Stat. 676 . The Enabling Act of 1889 provided the terms upon which the State could create a constitution and state government, including that the State "disclaim all right and title to the unappropriated public lands [within the State's boundaries], and to all lands lying within said limits owned or held by any Indian or Indian tribes." *Id.* at § 4,. The Enabling Act of 1889 provided further that Indian lands would remain under the "absolute jurisdiction and control of the Congress of the United States." *Id.*

9.     The Montana Constitution adopted and ratified these terms:

> All provisions of the enabling act of Congress (approved February 22, 1889, 25 Stat. 676), as amended and of Ordinance No. 1, appended to the Constitution of the state of Montana and approved February 22, 1889, including the agreement and declaration that all lands owned or held by any Indian or Indian tribes shall remain under the absolute jurisdiction and control of the congress of the United States, continue in full force and effect until revoked by the consent of the United States and the people of Montana.

Mont. Const. art. I.[2]

---

[2] *Crow Tribe of Indians v. Mont.*, 650 F.2d 1104, 1111 n.5 (9th Cir. 1981), *opinion amended on denial of reh'g*, 665 F.2d 1390 (9th Cir. 1982) ("This disclaimer was adopted and ratified in Montana's original constitution, Mont. Const. Ord. I, 2 (1889), and in the state's new constitution. Mont. Const. art. I (1972).").

10.    On August 30, 2022, Plaintiff Glacier County Regional Port Authority ("Port Authority") filed a complaint in this Court against Defendants Esau and the Bureau based on an incident that allegedly occurred at the Blackfeet Community College ("BCC"). Doc. 1.

11.    BCC is located in Browning, Montana, within the boundaries of the Blackfeet Indian Reservation.

12.    The Port Authority filed an amended complaint on September 6, 2022, Doc. 3, and a second amended complaint on October 19, 2022. Doc. 16.

13.    Upon information and belief, the Port Authority held a board meeting at the BCC in November 2021.

14.    Upon information and belief, prior to the COVID-19 pandemic, the Port Authority alternated holding its board meetings in Browning and Cut Bank, Montana, off the Blackfeet Indian Reservation. Upon information and belief, during the early months of the pandemic, the Port Authority held its meetings in Cut Bank.

15.    Upon information and belief, the November 2021 meeting at the BCC was the Port Authority's first meeting held in Browning, on the Blackfeet Indian Reservation, since the start of the COVID-19 pandemic.

16.    Upon information and belief, in 2021, the Montana Legislature passed H.B. 702 (codified at Mont. Code Ann. § 49-2-312) ("MCA § 49-2-312"), which

prohibits discrimination based on an individual's COVID-19 vaccination status for employment or public accommodation. Specifically, H.B. 702 provides:

> it is an unlawful discriminatory practice for: (a) a person or a governmental entity to refuse, withhold from, or deny to a person any local or state services, goods, facilities, advantages, privileges, licensing, educational opportunities, health care access, or employment opportunities based on the person's vaccination status or whether the person has an immunity passport[.]

Mont. Code Ann. § 49-2-312(1)(a).

17.     Upon information and belief, J.R. Myers, a non-Indian who was then not vaccinated against COVID-19, attempted to attend the Port Authority's November 2021 meeting at the BCC but was denied entry to the meeting.

18.     Upon information and belief, Mr. Myers subsequently filed a complaint against the Port Authority with the Defendant Bureau.

19.     Upon information and belief, the Defendant Bureau determined that the Port Authority illegally discriminated against Mr. Myers, pursuant to MCA § 49-2-312, by requiring in-person attendees at the November 2021 meeting at the BCC to provide proof of vaccination against COVID-19.

20.     Upon information and belief, based on the Defendant Bureau's findings, a contested case proceeding has been opened before the Department's Office of Administrative Hearings.

21.     Upon information and belief, the Port Authority has sought a stay of the contested case proceedings pending its request for injunctive relief from this Court.

## CAUSE OF ACTION: VIOLATION OF THE TREATY RIGHT TO EXCLUDE UNDER THE TREATY OF 1855

22.    Intervenor-Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

23.    Defendants' attempt to enforce Montana law in the form of H.B. 702 against the Port Authority in a Montana administrative proceeding based on actions that took place on tribal land within the boundaries of the Blackfeet reservation is preempted by the Blackfeet Nation's right to exclude under Article 4 of the Treaty of 1855.

24.    The Treaty of 1855 established a reservation for the Blackfeet Nation in which boundaries the Nation was promised it "shall exercise exclusive control." Treaty of 1855 at art. 4.

25.    The United States Supreme Court has repeatedly held that such "right to exclude" language in Indian treaties—including in the Treaty of 1855—vests tribes with civil jurisdiction over members and nonmembers alike and preempts exercise of jurisdiction by states. *Williams v. Lee*, 358 U.S. 217 (1959); *McClanahan v. State Tax Comm'n of Ariz.*, 411 U.S. 164 (1973); *Kennerly v. Dist. Ct. of Ninth Jud. Dist. of Mont.*, 400 U.S. 423 (1971); *see Little Horn State Bank v. Stops*, 555 P.2d 211 (Mont. 1976).

26.     The Ninth Circuit has recognized this source of tribal jurisdictional authority as one of two forms of the right to exclude. Namely, a treaty-reserved right to exclude, being enshrined in a treaty ratified by Congress, is the supreme law of the land under the Supremacy Clause of the Constitution.  U.S. Const. art. VI., cl. 2. Thus, "state laws that interfere with, or are contrary to [a treaty], made in pursuance of the constitution, are invalid." *Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*, 951 F.3d 1142, 1152 (9th Cir. 2020) (internal quotations and citations omitted). The terms of a treaty right to exclude extend to non-member activity on tribal land within the reservation. *See generally id.*

27.     Defendants' attempt to enforce H.B. 702 against the Port Authority violates the Blackfeet Nation's right to exclude under the Treaty of 1855. As the Montana Supreme Court has observed:

> The United States Supreme Court has consistently held that the Federal Government and tribes, *not states*, retain jurisdiction over territories defined as Indian Country in 18 U.S.C. § 1151(a), which includes "all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation."

*In re Est. of Big Spring*, 255 P.3d 121, 128 (Mont. 2011) (quoting 18 U.S.C. § 1151(a)) (citing *Alaska v. Native Village of Venetie Tribal Gov't*, 522 U.S. 520, 526

(1998)) (emphasis added). Accordingly, H.B. 702 has no force on tribal lands within the Blackfeet reservation, including at BCC.[3]

28.    The right to exclude under the Treaty of 1855 is reaffirmed by the Enabling Act of 1889, in which organic document the State of Montana was bound as a condition of its entry into the Union to disclaim jurisdiction over all Indian lands, as such lands would remain under the "absolute jurisdiction and control" of the United States. Enabling Act of 1889 at § 4.

29.    The United States Supreme Court has interpreted this disclaimer language in similar enabling acts to mean that jurisdictional authority of the United States prior to the state's admission is retained, and that state jurisdiction is preempted where a treaty right to exclude exists. *See McClanahan*, 411 U.S. at 176, n.15.

30.    Montana adopted and ratified this condition of the Enabling Act of 1889 in its constitution. Thus, the Montana Supreme Court has "…held that Indian treaties are 'regarded as a part of the law of the state as much as the state's own laws and Constitution[,] [are] effective and binding on [the] state legislature[ ] . . . [and are] superior to the reserved powers of the state, including the police power.'" *Montana*

---

[3] BCC is located on "Indian Country" as that term is defined by 18 U.S.C. § 1151 because it is located on "land within the limits of an[] Indian reservation under the jurisdiction of the United States Government." *Native Village of Venetie*, 522 U.S. at 526.

*v. Shook*, 67 P.3d 863, 866 (Mont. 2002) (quoting *Montana v. McClure*, 268 P.2d 629, 631 (Mont. 1954)).

31.     That Defendants' attempt to enforce H.B. 702 is against nonmembers is irrelevant, as the treaty right to exclude extends to nonmembers on tribal lands within the boundaries of the reservation. *See Swinomish*, 951 F.3d at 1160 (recognizing that Tribal Nations may enforce treaty-reserved rights to exclude against non-Indians).

32.     The Blackfeet Nation's authority to regulate members and nonmembers alike is undermined by Defendants' enforcement of H.B. 702 against entities operating on tribal lands within the Blackfeet reservation. H.B. 702 "interfere[s] with," *id.* at 1152, the Nation's sovereign authority over tribal lands within its reservation.

33.     By enforcing H.B. 702, Defendants are interfering with the Blackfeet Nation's sovereign authority over its reservation. The United States Supreme Court has held that when a treaty right to exclude exists, it preempts state jurisdiction without needing to ask the *Williams* test question of whether tribal self-government has been infringed upon. *McClanahan*, 411 U.S at 180 (discussing *Kennerly*, 400 U.S. at 423). Because enforcing H.B. 702 within the Blackfeet Indian Reservation "conflicts with" the Blackfeet Nation's right to exclude under the Treaty of 1855, H.B. 702 "simply must give way." *Swinomish*, 951 F.3d at 1152.

34.     Defendants' attempt to enforce H.B. 702 under the facts of this case contravene and are preempted by the Treaty of 1855, and in turn the Supremacy Clause of the United States. The inevitable conclusion is that H.B. 702 can have no force or effect.

## RELIEF

WHEREFORE, Intervenor-Plaintiff prays that the Court enter judgment in its favor as follows:

1.     Declare jurisdiction over this matter;

2.     Declare that Defendant's attempt to enforce H.B. 702 under the facts of this case violates Article 4 of the Treaty of 1855, and that it thus can have no force or effect of law under Article IV, Clause 2 of the United States Constitution;

3.     Grant permanent injunctive relief by ordering Defendants to cease and dismiss all administrative proceedings against the Port Authority;

4.     Grant permanent injunctive relief ordering Defendants to make no further attempts to enforce H.B. 702 within the Blackfeet reservation; and

5.     Grant any further relief which may in the discretion of the Court be necessary and proper to ensure that Defendants take no other action to apply H.B. 702 within the Blackfeet reservation.

RESPECTFULLY SUBMITTED this 15th day of November, 2022.

*/s/ Wesley James Furlong*
Wesley James Furlong (MT Bar No. 42771409)
NATIVE AMERICAN RIGHTS FUND

Mark J. Carter (*pro hac vice* forthcoming)
NATIVE AMERICAN RIGHTS FUND
950 F Street NW
Suite 1050
Washington, DC 20004
Phone: (202) 785-4166
Fax: (202) 822-0068
mark.carter@narf.org

Jason Searle (*pro hac vice* pending)
Matthew L. Campbell (*pro hac vice* forthcoming)
NATIVE AMERICAN RIGHTS FUND
1506 Broadway
Boulder, CO 80302
Phone: (303) 447-8760
Fax: (303) 443-7776
searle@narf.org
mcampbell@narf.org

*Counsel for Intervenor-Plaintiff Blackfeet Nation*