Lindsey R. Simon
Aleea K. Sharp
Agency Counsel
MONTANA DEPARTMENT OF LABOR AND INDUSTRY
P.O. Box 1728
Helena, MT 59624-1728
Telephone:  (406) 444-5466
Email:   lindsey.simon2@mt.gov
          aleea.sharp2@mt.gov

*Attorneys for Defendants Esau and MHRB*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| GLACIER COUNTY REGIONAL PORT AUTHORITY, | Case No. CV-22-81-GF-BMM-JTJ |
| Plaintiff, | Judge: Hon. Brian Morris |
| BLACKFEET NATION, | BRIEF IN SUPPORT OF DEFENDANTS ESAU AND MHRB'S MOTION TO DISMISS INTERVENOR'S AMENDED COMPLAINT [Doc. 50] |
| Intervenor-Plaintiff, | |
| vs. | |
| LAURIE ESAU ET AL., | |
| Defendants. | |

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ................................................................................. iii

I.      INTRODUCTION ........................................................................................1

II.   LEGAL STANDARD ...................................................................3

III.  ARGUMENT.............................................................................4

    A.   The Nation's Claims are Not Justiciable Because It Lacks Standing
         and the Claims are Not Ripe ..............................................5

         1.   Overview of the Standing and Ripeness Requirements ............6

         2.   The Nation's Lack of Injury-in-Fact Deprives It of Both
              Standing and Constitutional Ripeness ......................................8

         3.   The Nation's Claims are Not Prudentially Ripe Because They
              Are Not Fit for Adjudication and Dismissal Would Not Impose
              a Hardship...........................................................................12

              a.   The Nation's Claims Request Further Factual Development
              and a Final State Action to be Fit for Adjudication .................13

              b.   The Nation Cannot Establish That Dismissal Would Impose
              a Hardship..........................................................................18

    B.   MRHB Is Entitled to Eleventh Amendment Sovereign Immunity .....18

IV.   CONCLUSION .........................................................................19

# TABLE OF AUTHORITIES

## <u>Cases</u>

Abbott Labs. v. Gardner,
    387 U.S. 136 (1967)..................................................................................7,13

Alabama v. Pugh,
    438 U.S. 781 (1978)....................................................................................18

Allen v. Wright,
    468 U.S. 737 (1984)..................................................................................9,14

Anchorage v. United States,
    980 F.2d 1320 (9th Cir. 1992)....................................................................13

Ashcroft v. Iqbal,
    556 U.S. 662 (2009).......................................................................................4

Ashwander v. Tenn. Valley Auth.,
    297 U.S. 288 (1936).......................................................................................3

Babbitt v. United Farm Workers Nat'l Union,
    442 U.S. 289 (1979).......................................................................................9

Balistreri v. Pacifica Police Dept.,
    901 F.2d 696 (9th Cir. 1990).........................................................................3

Big Sandy Rancheria Enters. v. Bonta,
    1 F.4th 710 (9th Cir. 2021)..........................................................................17

Brooks v. Sulphur Springs Valley Elec. Coop.,
    951 F.2d 1050 (9th Cir. 1991)......................................................................19

Cal. Consumers v. Columbia House, No. C-97-3233-VRW,
    1997 U.S. Dist. LEXIS 20649 (N.D. Cal. Dec. 22, 1997).................................8

Cal. Pro-Life Council, Inc. v. Getman,
    328 F.3d 1088 (9th Cir. 2003).......................................................................7

Clapper v. Amnesty Int'l USA,
    568 U.S. 398 (2013)..........................................................................9

Colwell v. Dep't of Health & Human Servs.,
    558 F.3d 1112 (9th Cir. 2009)..........................................................6

Cousins v. Lockyer,
    568 F.3d 1063 (9th Cir. 2009)..........................................................4

Dietary Supplemental Coal., Inc. v. Sullivan,
    978 F.2d 560 (9th Cir. 1992)..........................................................14

Edelman v. Jordan,
    415 U.S. 651 (1974)........................................................................19

Educ. Credit Mgmt. Corp. v. Coleman (In re Coleman),
    560 F.3d 1000 (9th Cir. 2009)........................................................13

Flast v. Cohen,
    392 U.S. 83 (1968).....................................................................11,14

Franklin v. Massachusetts,
    505 U.S. 788 (1992)........................................................................13

Hash v. U.S. West Comm'ns Servs.,
    268 Mont. 326, 886 P.2d 442 (1994)..............................................16

Hodgers-Durgin v. De La Vina,
    199 F.3d 1037 (9th Cir. 1999) (en banc) ..........................................7

Idaho v. Coeur d'Alene Tribe of Idaho,
    521 U.S. 261 (1997)........................................................................18

L.A. Cnty. Bar Ass'n v. Eu,
    979 F.2d 697 (9th Cir. 1992)............................................................8

Lee v. Oregon,
    107 F.3d 1382 (9th Cir. 1997) .........................................................6

Lee Pharms. v. Kreps,
    577 F.2d 610 (9th Cir. 1978)..............................................................................14

Liverpool, N.Y. & Phila. S.S. Co. v. Comm'rs of Emigration,
    113 U.S. 33 (1885).............................................................................................3

Los Angeles v. Lyons,
    461 U.S. 95 (1983).............................................................................................6

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992).........................................................................................6,9

Lujan v. Nat'l Wildlife Fed'n,
    497 U.S. 871 (1990)..........................................................................................11

Manshantucket Pequot Tribe v. Town of Ledyard,
    722 F.3d 457 (2d Cir. 2013).............................................................................11

Martin v. Special Res. Mgmt.,
    246 Mont. 181, 803 P.2d 1086 (1990)..............................................................16

Mont. Envtl. Info. Ctr. v. Stone-Manning,
    766 F.3d 1184 (9th Cir. 2014) ............................................................................9

Montanans for Cmty. Dev. v. Motl, No. CV-13-70-H-CCL,
    2014 U.S. Dist. LEXIS 32896 (D. Mont. Mar. 12, 2014)................................12

Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians,
    471 U.S. 845 (1985)..........................................................................................15

Navarro v. Block,
    250 F.3d 729 (9th Cir. 2001)..............................................................................3

NRDC v. Abraham,
    388 F.3d 701 (9th Cir. 2004)............................................................................13

Pennhurst State Sch. & Hosp. v. Halderman,
    465 U.S. 89 (1984)............................................................................................19

San Diego Cnty. Gun Rights Comm'n v. Reno,
    98 F.3d 1121 (9th Cir. 1996)......................................................................7

Simon v. E. Ky. Welfare Rights Org.,
    426 U.S. 26 (1976).....................................................................................7

Spokeo, Inc. v. Robins,
    578 U.S. 330 (2016) ..................................................................................9

Texas v. United States,
    523 U.S. 296 (1998)............................................................................12,18

Thomas v. Anchorage Equal Rights Comm'n,
    220 F.3d 1134 (9th Cir. 2000) (en banc) ..............................................6,9

Thomas v. Union Carbide Agric. Prods. Co.,
    473 U.S. 568 (1985).................................................................................12

Twitter, Inc. v. Paxton,
    26 F.4th 1119 (9th Cir. 2022)...................................................................7

United States v. Braren,
    338 F.3d 971 (9th Cir. 2003)..................................................................17

Whipple v. Mann Mortgage, LLC, No. CV 13-188-M-DWM-JCL,
    2014 U.S. Dist. LEXIS 50756 (D. Mont. Feb. 18, 2014)......................3

Winter v. Cal. Med. Review, Inc.,
    900 F.2d 1322 (9th Cir. 1990).................................................................12

**United States Constitution**
    Art. III........................................................................................................5

**Federal Rule of Civil Procedure**
    Rule 12(b)(6) .........................................................................................3,19

**Montana Constitution**
    Art. XII, § 2 .............................................................................................19

**Montana Code Annotated**

§ 2-15-1701 ...................................................................................19

§ 49-2-101 ...................................................................................19

§ 49-2-312 ...................................................................2,5,8,10,15

**Administrative Rules of Montana**

Rule 24.8.701................................................................................10

Rule 24.9.115................................................................................10

Defendants Laurie Esau and the Montana Human Rights Bureau (MHRB) submit this brief in support of their motion to dismiss Intervenor-Plaintiff Blackfeet Nation's (Nation's) *Amended Complaint for Declaratory and Injunctive Relief* (Doc. 50) (*Amended Complaint*).

## I.   INTRODUCTION

Fundamental principles of justiciability compel dismissal of the *Amended Complaint* because there is a disconnect between the Defendants' acts and the Nation's protected legal interests. This disconnect exists because the Defendants have not taken—and may never take—any action that challenges the Nation's treaty and sovereign rights. For lack of a final agency action, this case presents an amalgam of standing issues, ripeness issues, and other principles of jurisprudence that require this Court to forego ruling on the issues raised in the *Amended Complaint*.

Plainly put, Defendants have neither a definite nor a concrete dispute with the Nation. Defendants do not dispute that the Nation has both treaty and sovereign rights to exclude individuals from its territory. Defendants are not challenging the legitimacy of the Nation's vaccine regulation. Defendants are not seeking to enforce the Montana Human Rights Act (MHRA) against the Nation or any of its members in this case. In contrast, Defendants have exercised their duties to enforce state law human rights protections and initiated a fact-finding hearing involving

two non-tribal parties. Defendants' inquiry will enable the Office of Administrative Hearings (OAH) to decide whether state jurisdiction exists over the charging party's discrimination claim against non-tribal entities, and if it does, whether the named non-tribal entities have violated the MHRA.

The single controversy currently existing between the Department and the Nation is whether OAH's fact-finding and administrative case should proceed to a hearing at which an agency action against non-tribal entities may be taken. Currently, the Nation does not have standing to enjoin enforcement of Defendants' administrative proceeding because it is not a party to the OAH proceedings. The Nation characterizes the controversy in this case as state interference with the Nation's treaty and sovereign rights to exclude from its tribal land. Respectfully, the Nation's claims are speculative and unripe because the Defendants have not taken any action to substantively enforce Mont. Code Ann. § 49-2-312[1] against co-Plaintiff Glacier County Regional Port Authority (GCRPA). The facts underlying J.R. Myers' discrimination claim against GCRPA are so underdeveloped at this stage that there is no definite and concrete threat that OAH will enforce § 49-2-312

---

[1] Both plaintiffs in this case repeatedly refer to the vaccine anti-discrimination law as "H.B. 702." However, the legislation passed the Montana Legislature, was signed by the governor, and became effective July 1, 2021. Defendants therefore refer to the law by its statutory citation, Mont. Code Ann. § 49-2-312.

against GCRPA "based on actions that allegedly took place at Blackfeet College." (Doc. 50, ¶ 42, at 11).

Without standing and ripeness, this case cannot proceed. By filing its amended complaint, the Nation asks this Court to violate a core principle of jurisdiction and anticipate a conflict between tribal regulation and state regulation "in advance of the necessity of deciding it." *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 346–47 (1936) (quoting *Liverpool, N.Y. & Phila. S.S. Co. v. Comm'rs. of Emigration*, 113 U.S. 33, 39 (1885)). Defendants' fact-finding action before the OAH must proceed to a final agency action before any claimed challenge to the Nation's treaty or sovereignty rights are ripe for this Court's review.

## II.   LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim "tests the legal sufficiency of a claim." *Whipple v. Mann Mortgage, LLC*, No. CV 13-188-M-DWM-JCL, 2014 U.S. Dist. LEXIS 50756, *7 (D. Mont. Feb. 18, 2014) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). Dismissal under Rule 12(b)(6) is proper if there exists a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Id.* at *7 (citing *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1990)).

When evaluating a motion to dismiss, all allegations of material fact are assumed to be true and are construed in the light most favorable to the non-moving

party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). This principle does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.   ARGUMENT

Defendants have yet to take agency action adverse to any party, regardless of tribal affiliation, in this case. A factual record has yet to be developed which is necessary to determine whether State enforcement action under the MHRA is authorized and will proceed. No hearing of the non-tribal parties' discrimination claims has yet occurred. No final agency action has been taken, and any future action Defendants may take adverse to non-tribal entities, which arguably may implicate the Nation's legal rights, is subject to appeal before the Nation's assertions here would be ripe for this Court's review.

Defendants' sole interest in this case is to preserve jurisdiction to enforce human rights protections for all Montana citizens regardless of the locality of where violations occur. The State's jurisdiction to enforce MHRA protections against non-tribal entities acting in violation of state law human rights protections within tribal reservation boundaries is solidly grounded in federal jurisprudence. Regardless, questions determinative of the State's enforcement authority against non-tribal entities on the Nation's territories is not currently ripe here.

For want of a final State action infringing the Nation's tribal or sovereign rights, the Nation lacks standing to challenge the continuation of the OAH case to which the Nation is not a party. Defendants' administrative proceedings against GCRPA should proceed to final agency action, with opportunity for appeal by the non-tribal parties to that case before the Nation's claims create a justiciable federal question. The Nation has not and cannot articulate a legally protected interest in the State's administrative action to which the Nation is not a party. The Nation's alleged injury in this case may arise only if and when OAH determines conduct that occurred on the Blackfeet Reservation violated § 49-2-312. That has not happened. It may never happen. A final state action must occur before the Nation's interests in this case can be assessed. The hypothetical and speculative nature of the Nation's asserted injury further deprives the Nation of standing and renders its claims unripe for adjudication.

Additionally, the Nation asserts a claim against the Montana Human Rights Bureau (MHRB). MHRB is a division of the State of Montana entitled to sovereign immunity. For all these reasons, the *Amended Complaint* must be dismissed.

**A.     The Nation's Claims are Not Justiciable Because It Lacks Standing and the Claims are Not Ripe**

Article III of the United States Constitution limits the subject matter jurisdiction of the federal courts to cases or controversies. The doctrines of ripeness and standing are two threshold requirements for a "case or controversy."

*See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). Defendants address both issues in this brief, but because "[s]tanding and ripeness under Article III are closely related," the arguments for each are not always susceptible to separate analyses. *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1123 (9th Cir. 2009). For organizational purposes, this section first addresses the Nation's lack of injury-in-fact requirement, then how this case is not fit for adjudication, and finally the lack of hardship that would befall the Nation if this case were dismissed.

    1.    <u>Overview of the Standing and Ripeness Requirements</u>

Standing is concerned with *who* may bring a lawsuit, whereas ripeness concerns *when* a lawsuit may be brought. *Lee v. Oregon*, 107 F.3d 1382, 1387 (9th Cir. 1997) (citing Erwin Chemerinsky, *Federal Jurisdiction* § 2.4, at 98–99 (1989)). Thus, ripeness is often characterized as "standing on a timeline." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc).

Standing requires a plaintiff to establish that it has suffered an injury-in-fact, which the courts break down into three components: (1) "an invasion of a legally protected interest" that (2) is "concrete and particularized" and (3) "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Additionally, standing requires that the plaintiff's injury be both causally connected to the defendant's conduct and be redressable by a

favorable judicial decision. *Id.* (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38–43 (1976).

> The "basic rationale" of the ripeness doctrine
>
> is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). The ripeness doctrine includes constitutional ripeness (serving as a limit on the judiciary's power) and prudential ripeness (to aid a court's avoidance of adjudicating disputes that may resolve themselves). *Thomas*, 220 F.3d at 1138–42; *Twitter, Inc. v. Paxton*, 26 F.4th 1119, 1123–24 (9th Cir. 2022).

Constitutional ripeness is synonymous with standing's injury-in-fact prong. *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003) (citing *Thomas*, 220 F.3d at 1138). Prudential ripeness considers "the fitness of the issues for judicial decision and the hardship to the parties of withholding court considerations." *Thomas*, 220 F.3d at 1141 (quoting *Abbott Labs.*, 387 U.S. at 149; *see also Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1040–41 (9th Cir. 1999) (en banc); *San Diego Cnty. Gun Rights Comm'n v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996)).

The Nation claims that it is injured by Defendants' "attempt to enforce" § 49-2-312 against GCRPA and seeks an order ceasing and dismissing the administrative proceedings against GCRPA. (Doc. 50, ¶¶ 1–2, 42, 46, 50, 53, 55 & 62). The Nation's challenge to an "attempted" enforcement essentially concedes no _actual_ enforcement has yet occurred. The "attempt" referred to is presumably either the pending OAH administrative proceeding itself or an eventual discrimination determination that may occur in the future. Under the first option, the Nation lacks injury-in-fact and thus cannot establish standing or constitutional ripeness. Under the second option, the matter is prudentially unripe because there is no final agency action enforcing § 49-2-312 against GCRPA and there may never be.

2. <u>The Nation's Lack of Injury-in-Fact Deprives It of Both Standing and Constitutional Ripeness</u>

Constitutional ripeness and injury-in-fact require the plaintiff to "demonstrate a sufficient personal stake in the outcome to justify invocation of the judicial process." *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 700 (9th Cir. 1992) (citing *Baker v. Carr*, 369 U.S. 186, 204 (1962)). "[T]he standing doctrine effectuates the general prohibition against one litigant raising another person's legal rights." *Cal. Consumers v. Columbia House*, No. C-97-3233-VRW, 1997 U.S. Dist. LEXIS 20649, *7 (N.D. Cal. Dec. 22, 1997). This is accomplished by ensuring that the asserted injury "affect[s] the plaintiff in a personal and individual

way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). A court must carefully examine the plaintiff's allegations "to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752 (1984).

Injury-in-fact also requires that the injury be imminent. "An injury is imminent 'if the threatened injury is certainly impending, or there is a 'substantial risk that the harm will occur.'" *Mont. Envtl. Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1189 (9th Cir. 2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415 n.5 (2013)). The plaintiff must face "a realistic danger of sustaining a direct injury." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). An injury that is too "imaginary" or "speculative" will not support subject matter jurisdiction. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).

Here, the Nation unquestionably has a personal interest in preserving its treaty rights and protecting its tribal sovereignty. Defendants concur these legal protections are sacrosanct. But the mere existence of OAH administrative proceedings does not threaten these interests in any way, and in the least not sufficiently to establish the requisite injury-in-fact to create standing and ripeness. The Nation is not a party to the OAH proceeding, and thus due process prevents

OAH from entering any determination that affects the Nation's rights. OAH may consider the Nation's treaty and sovereignty rights, but only for the purpose of determining OAH's own jurisdiction over the questions of state law enforcement against the non-tribal parties appearing before it. *See* Admin. R. Mont. 24.8.701(1) ("The Office of Administrative Hearings, shall, at all times, have jurisdiction to determine the jurisdiction of the department over any particular contested case."); *see also* Admin. R. Mont. 24.9.115. The Nation thus has no personal interest in the mere fact that OAH proceedings are occurring with other parties unaffiliated with the Nation.

There is also no imminent threat to the Nation's treaty and sovereign right to exclude entry on tribal lands because OAH has not made any substantive determinations in the case. OAH has not yet heard the facts relevant to the question of whether OAH has jurisdiction to conclude enforcement of state law is warranted. Nor has the factual record been established to inform OAH's review of underlying discrimination issues. Any "enforcement" of § 49-2-312 against GCRPA is entirely speculative at this time. Any potential infringement of the Nation's interest is also speculative. There remains a possibility that OAH will determine, based on facts not yet established in the record, that enforcement action is not warranted because either OAH does not have jurisdiction, or that GCRPA did not violate § 49-2-312. This is not a situation where "factual components [have

been] fleshed out, by some concrete action." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).

In the *Amended Complaint*, the Nation cites to *Manshantucket Pequot Tribe v. Town of Ledyard* to assert the Nation should be afforded "special solicitude" in the standing analysis as a tribal government seeking to protect its right to self-government. 722 F.3d 457 (2d Cir. 2013). There are two problems with this assertion of standing, however. First, "[t]he fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Flast v. Cohen*, 392 U.S. 83, 99 (1968). The Defendants do not challenge the Nation's right to self-government or to exclude, but the Nation cannot rely on its uncontested rights to obtain standing. It must demonstrate how it is concretely threatened by the continuation of the OAH proceeding, but it cannot.

Second, the facts presented in *Manshantucket Pequot Tribe* distinguish it from this case on two determinative factors. That case involved a town's property tax assessment against gaming machines used by the plaintiff tribe in its casinos located in Indian Country. *Id.* at 459. In *Manshantucket*, the tribe sued to challenge adverse state action *previously taken* in violation of tribal treaty and sovereignty rights. Before the tribe sued, the state took final action and imposed a tax on gaming income generated on tribal land.

That is not the case here. The Nation is not a central actor in the dispute between GCRPA and Myers, and there have been no factual determinations that conclusively tie the events in Myers' discrimination complaint to either Indian Country or any action by the Nation. These essential fact questions will determine the outcome of the OAH proceeding and the Nation's interest in the dispute. "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985)). There are too many contingencies in this case that deprive the Nation of injury-in-fact and render it unripe. There are insufficient facts of record to establish an injury-in-fact to vest subject matter jurisdiction in this Court.

3. <u>The Nation's Claims are Not Prudentially Ripe Because They Are Not Fit for Adjudication and Dismissal Would Not Impose a Hardship</u>

Prudential ripeness considers whether a case is fit for adjudication and whether the parties would suffer a hardship if the court refrained from ruling. *E.g.*, *Montanans for Cmty. Dev. v. Motl*, No. CV-13-70-H-CCL, 2014 U.S. Dist. LEXIS 32896, *7 (D. Mont. Mar. 12, 2014). Thus, it consists of a "fitness" component and a "hardship" component.

"A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Winter v.*

*Cal. Med. Review, Inc.*, 900 F.2d 1322, 1325 (9th Cir. 1990) (citations omitted). Hardship, meanwhile, means "hardship of a legal kind, or something that imposes a significant practical harm upon the plaintiff." *NRDC v. Abraham*, 388 F.3d 701, 706 (9th Cir. 2004). The harm must be "immediate, direct, and significant." *Anchorage v. United States*, 980 F.2d 1320, 1326 (9th Cir. 1992).

This case requires significant further factual development, and there has been no final action that would enable this Court to determine whether the Defendants have infringed on the Nation's treaty and sovereign rights. This case is not fit for adjudication. The Nation would suffer no significant harm if this Court were to delay taking up the question while the state administrative case proceeds to a final determination.

> a.   *The Nation's Claims Request Further Factual Development and a Final State Action to be Fit for Adjudication*

"The purpose of the 'fitness' test under *Abbott* is to delay consideration of the issue until the pertinent facts have been well-developed in cases where further factual development would aid the court's consideration." *Educ. Credit Mgmt. Corp. v. Coleman (In re Coleman)*, 560 F.3d 1000, 1009 (9th Cir. 2009).

The fitness component of prudential ripeness often arises in cases involving administrative proceedings, and the courts routinely require that an administrative decision be final before a federal lawsuit is ripe. *E.g., Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992) ("The core question is whether the agency has completed

its decision making process, and whether the result of that process is one that will directly affect the parties."); *Lee Pharms. v. Kreps*, 577 F.2d 610, 618 (9th Cir. 1978) ("Our past decisions have explicitly mandated that an agency action be final before a declaratory judgment action is ripe[.]"); *Anchorage v. United States*, 980 F.2d 1320, 1323 (9th Cir. 1992); *Dietary Supplemental Coal., Inc. v. Sullivan*, 978 F.2d 560, 562 (9th Cir. 1992).

Requiring that an administrative agency complete its fact-finding and decision-making process ensures that federal courts do not hear cases "where pending administrative proceedings or further agency action might render the case moot and judicial review completely unnecessary." *Sierra Club v. Nuclear Regulatory Comm'n*, 825 F.2d 1356, 1362 (9th Cir. 1987) (citations omitted). This is an important policy because federal jurisdiction should be invoked "only when adjudication is 'consistent with a system of separated powers and [the dispute is one] traditionally thought to be capable of resolution through the judicial process[.]'" *Allen v. Wright*, 468 U.S. 737, 752 (1984) (quoting *Flast v. Cohen*, 392 U.S. 83, 97 (1968)).

Allowing OAH an opportunity to determine whether it has jurisdiction and to develop a factual record before this Court will engage in a review asks no more than what tribal courts receive when tribal court jurisdiction is challenged. In *Nat'l*

*Farmers Union Ins. Cos. v. Crow Tribe of Indians*, the Supreme Court declined to

halt tribal court proceedings when tribal jurisdiction was challenged. It held:

> [P]olicy favors a rule that will provide the forum whose jurisdiction is
> being challenged the first opportunity to evaluate the factual and legal
> bases for the challenge. Moreover the orderly administration of justice
> in the federal court will be served by allowing a full record to be
> developed in the Tribal Court before either the merits or any question
> concerning appropriate relief is addressed. The risk of the kind of
> "*procedural nightmare*" that has allegedly developed in this case will
> be minimized if the federal court stays its hand until after the Tribal
> Court has had a full opportunity to determine its own jurisdiction and
> to rectify any errors it may have made. Exhaustion of tribal court
> remedies, moreover, will encourage tribal courts to explain to the
> parties the precise basis for accepting jurisdiction, and will also
> provide other courts with the benefit of their expertise in such matters
> in the event of further judicial review.

471 U.S. 845, 856–57 (1985) (emphasis added). This case is also quickly

becoming a procedural nightmare with numerous amended complaints and

renewed motions.

The need for further factual development in this case is apparent from the

Nation's own pleading. The Nation seeks declaratory relief as to the Defendants'

ability to act "under the facts of this case." (Doc. 50, at 18). It also seeks injunctive

relief against enforcement of § 49-2-312 "within the Blackfeet Indian

Reservation." *Id.* The "facts of this case," and whether the conduct complained of

occurred "within the Blackfeet Indian Reservation" are open questions of fact not

yet established in the record. There remain questions of fact whether Defendants

acted previously or are actually seeking to assert current or future regulatory authority over any act that occurred, or may occur, on the Reservation.

It is entirely plausible that the facts will later reveal that the relevant acts did *not* occur in Indian Country. A MHRA cause of action arises when the charging party is *notified* of a potentially discriminatory decision, not when the decision is carried out. *Hash v. U.S. West Comm'ns Servs.*, 268 Mont. 326, 330, 886 P.2d 442, 444 (1994). A charging party is not required to wait until they are terminated to file suit; notification that they will be terminated is sufficient. As the Montana Supreme Court analogized in *Martin v. Special Res. Mgmt.*, "the assailant cannot contend he is not culpable until the victim impacts the ground. It was the decision and the act thereupon which caused the end result, and it is at that point where legal redress may first be sought." 246 Mont. 181, 185, 803 P.2d 1086, 1089 (1990).

In this case, it is unknown whether Myers' discrimination cause of action accrued before the November 18, 2021, meeting at Blackfeet Community College (BCC). It is unknown whether Myers even entered the Reservation or attempted to attend the meeting.[2] It is also unknown whether, outside of the Reservation,

---

[2] Defendants do not rely on the following source (or any facts outside of the pleadings) in this motion to dismiss, but they cite to this article merely to highlight how undeveloped the pertinent facts are in this case and how the Nation's claimed injury is wholly speculative. Katheryn Houghton, *Blackfeet Nation Challenges Montana Ban on Vaccine Mandates*, GLACIER REPORTER, Nov. 22, 2022,

GCRPA chose BCC as the location for its November 2021 meeting with

discriminatory intent or whether GCRPA notified Myers of its intention to bar his

attendance.

     All these factors render this matter unfit for adjudication because it is

unknown what facts OAH may rely on for its future determination in this case.

*E.g.*, *United States v. Braren*, 338 F.3d 971, 975–96 (9th Cir. 2003) (holding that a

water rights claim was not ripe because it was not known what standard the State

of Oregon would apply in the adjudication process). If OAH determines that

GCRPA chose BCC as the location for its November 2021 meeting with the

knowledge that a vaccine mandate was required and with the intent to exclude

unvaccinated non-Blackfeet individuals from the meeting, then under Montana

law, Myers' MHRA cause of action accrued when he was notified of that decision.

If all of these events occurred without either GCRPA or Myers stepping foot onto

the Reservation, then the Nation cannot establish standing under those facts. *See,*

*e.g.*, *Big Sandy Rancheria Enters. v. Bonta*, 1 F.4th 710, 725 (9th Cir. 2021)

("Whether state regulation infringes on tribal sovereignty depends on *who* is being

---

http://www.cutbankpioneerpress.com/glacier_reporter/article_8ff231c8-6a9d-11ed-a5ea-672de0ead2f8.html ("[Myers] said he didn't attend the meeting at Blackfeet Community College in Browning because he didn't want to reveal his vaccination status—adding that the Montana law protects him from doing so. Instead, he lodged a complaint with the state.").

BRIEF IN SUPPORT OF DEFENDANTS ESAU AND MHRB'S MOTION TO DISMISS
INTERVENOR'S AMENDED COMPLAINT [Doc. 50]                                    17

regulated—Indians or non-Indians—and *where* the activity to be regulated takes place—on or off a tribe's reservation.").

> b.    *The Nation Cannot Establish That Dismissal Would Impose a Hardship*

It is likewise not possible for the Nation to establish that it would suffer a hardship by allowing a state agency to hear evidence and make a determination under state law in a proceeding that the Nation is not party to. At worst, the Nation is asked to bide it's time to allow OAH to act in this case. As the Supreme Court stated in *Texas v. United States*— "the hardship to Texas of biding its time is insubstantial." 523 U.S. 296, 302 (1998). Accordingly, this case is not prudentially ripe for adjudication.

## B.    MRHB Is Entitled to Eleventh Amendment Sovereign Immunity

The *Amended Complaint* seeks relief against the MRHB, which the Nation characterizes as "a government agency of the State of Montana." (Doc. 50, ¶ 6, at 4). Because MHRB is a government subdivision of the State of Montana, it is not subject to suit pursuant to the Eleventh Amendment of the United States Constitution, and it must be dismissed as a party.

"There can be no doubt" that the Eleventh Amendment bars suit against a state unless the state has consented to being sued. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). This also applies to a suit against a state agency. *See, e.g.*, *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267–68 (1997). "This jurisdictional

BRIEF IN SUPPORT OF DEFENDANTS ESAU AND MHRB'S MOTION TO DISMISS
INTERVENOR'S AMENDED COMPLAINT [Doc. 50]                                    18

bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974) ("[T]his Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state."), *overruled on other grounds by Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989); *Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th Cir. 1991).

Without dispute, MHRB is an organizational unit of the Montana Department of Labor and Industry, which is an executive agency of the State of Montana. Mont. Const. Art. XII, § 2; Mont. Code Ann. § 2-15-1701; § 49-2-101(8). The Nation's effort to sue MHRB is prohibited by Eleventh Amendment sovereign immunity, and thus all allegations and prayers for relief against MHRB must be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

## IV.   CONCLUSION

Defendants request that the Nation's *Amended Complaint* be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that the Nation lacks standing, and the matter is not ripe for judicial consideration. This Court must dismiss MHRB as a defendant regardless of the standing and ripeness issues

because, as a division of the State of Montana, it is immune from suit under

Eleventh Amendment sovereign immunity.

DATED this 31st day of January 2023.

/s/ Lindsey R. Simon
LINDSEY R. SIMON
Montana Department of Labor and Industry
Attorney for Defendants Esau and MHRB

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), I certify that this *Brief in Support of Defendants Esau and MHRB's Motion to Dismiss Intervenor's Amended Complaint* is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count, calculated by Microsoft Word for Windows is 4,575 words long, excluding caption, certificates of service and compliance, and if required, any tables of contents and authorities, and exhibit index.

By: */s/ Lindsey R. Simon*
LINDSEY R. SIMON
Montana Department of Labor and Industry
Attorney for Defendants Esau and MHRB

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing document with the clerk of the court for the United States District Court for the District of Montana, using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

DATED this 31st day of January 2023.

By: */s/ Lindsey R. Simon*
LINDSEY R. SIMON
Montana Department of Labor and Industry
Attorney for Defendants Esau and MHRB