IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| GLACIER COUNTY REGIONAL PORT AUTHORITY,<br><br>     Plaintiff,<br><br>and<br><br>BLACKFEET NATION,<br><br>     Intervenor-Plaintiff,<br><br>v.<br><br>LAURIE ESAU, MONTANA HUMAN RIGHTS BUREAU, PETER DAMROW, DEB BROADBENT, CURTIS ALMAY, ANN BRODSKY, RICHARD BARTOS, and MONTANA HUMAN RIGHTS COMMISSION,<br><br>     Defendants. | **CV-22-81-GF-BMM**<br><br>**ORDER** |

## INTRODUCTION

Plaintiff Glacier County Regional Port Authority ("Port Authority") moves for a preliminary injunction and temporary restraining order ("TRO") against Defendants Laurie Esau ("Esau"), the Commissioner of the Montana Department of Labor and Industry ("DLI"), and the Montana Human Rights Bureau ("MHRB")

(collectively "Defendants"). (Doc. 19.) Defendants oppose the motion. The Court conducted a motion hearing on March 20, 2023. (Doc. 75.)

## FACTUAL AND LEGAL BACKGROUND

Port Authority provides quasi-governmental services to develop and sustain businesses throughout Glacier County. Glacier County, the City of Cut Bank, and the Community of Browning established Port Authority by joint resolution. Blackfeet Nation ("Nation") is a federally recognized American Indian tribe. Approximately 7,000 of the Nation's 17,321 enrolled tribal members live on the Blackfeet Indian Reservation ("Reservation"). (Doc. 50 at 3.) Part of the Reservation is in Glacier County. (*Id.*)

Port Authority's monthly board meetings are open to the public. Port Authority alternately held its board meetings in Browning, on the Reservation, and in Cut Bank before the COVID-19 pandemic. (Doc. 16 at 3.) Port Authority moved these meetings off the Reservation to Cut Bank during the height of the pandemic. (*Id.*) Port Authority held its first meeting back in Browning on November 18, 2021. (*Id.*; Doc. 60 at 23.)

Blackfeet Nation COVID-19 Laws and Regulations.

Port Authority initially alleged that Blackfeet Tribal Ordinance 121 required mandatory vaccination against COVID-19 for anyone attending an in-person meeting on the Reservation. (Doc. 16 at 3.) Port Authority failed to attach Tribal

Ordinance 121 to any of its filings. Further evidence from the Nation confirms that Tribal Ordinance 121 contained no explicit vaccine mandate. (Doc. 50-1–50-4.) The relevant authority comes from a combination of the Nation's Tribal Business Council ("Business Council"), the Nation's Revenue Department ("Revenue Department"), and Blackfeet Community College ("BCC") regulations. (*Id.*)

The Business Council passed Amending Resolution No. 16-2018 on March 9, 2021, to update the Nation's COVID-19 Emergency Operations Plan. (Doc. 50-1.) The resolution took effect on March 15, 2021. (*Id.*) The Revenue Department issued an Administrative Order on March 19, 2021, that required businesses to take specific COVID-19 response measures. (Doc. 50-3.) The Administrative Order also authorized covered businesses to "enact stricter guidelines in accordance with CDC recommendations." (*Id.* at 2.) The Business Council passed an amended order ("Business Council Order") concerning COVID-19 business regulations on June 16, 2021. (Doc. 50-2.) The Business Council Order defines educational entities as covered businesses. (*Id.* at 1.) The Business Council Order set forth minimum COVID-19 requirements and practices for businesses on the Reservation. (*Id.* at 3–4.)

BCC issued COVID-19 policies ("Policies") pursuant to the Revenue Department's March 19, 2021 Administrative Order. (Doc. 50-4.) The Policies took effect on August 24, 2021. (*Id.*) BCC discontinued the Policies on

approximately June 30, 2022. (Doc. 50 at 10.) The Policies provided that "community members must provide proof of full[] vaccinat[ion] to physically access the [BBC] campus." (Doc. 50-4 at 2.) The Policies stated that BCC would "deny access" to "community members [who] do not provide proof of vaccination[.]" (*Id.*)

State Administrative Legal and Procedural History.

The Montana legislature passed HB 702, codified at Mont. Code Ann. § 49-2-312, during the 2021 legislative session. The law adds vaccination status to the list of protected categories under Montana Human Rights Act ("MHRA"). Mont. Code Ann. § 49-2-312. The state law prohibits discrimination based on a person's COVID-19 vaccination status for employment or public accommodation. *Id.* The law took effect on May 7, 2021.

The MHRA authorizes any person in Montana to submit a complaint of discrimination to DLI. DLI will conduct an informal investigation. DLI sets the matter for a formal hearing before the agency's Office of Administrative Hearing ("OAH") upon a finding of "reasonable cause" to believe that discrimination occurred. OAH possesses discretion to fashion remedies following a hearing and upon a finding of discrimination. These remedies include injunctive relief, compensatory damages, and reporting requirements. Mont. Code Ann. § 49-2-506(1)(a)–(c). A party may appeal an adverse determination to the Montana

Human Rights Commission ("MHRC"). Mont. Code Ann. § 49-2-505(4). A party may seek federal-court review within 30 days of a final agency decision. *Id.* § 49-2-505(9).

Port Authority initially alleged that a member of the public, J.R. Myers ("Myers"), attempted to appear in person at the November 18, 2021, Port Authority board meeting in Browning. (Doc. 60 at 23.) Myers has submitted an affidavit that states that he "did not attend or attempt to attend" the board meeting. (Doc. 67-1 at 2.) Myers further states that he "did not enter" the Reservation on November 18, 2021. (*Id.*) Myers "did not disclose [his] vaccination status" to Port Authority. (*Id.* at 3.) Myers confirms that he "never ha[s] alleged that [he] attempted to attend a meeting on the Blackfeet Reservation but was turned away due to [his] vaccination status." (*Id.*)

Myers filed a complaint against the Port Authority with DLI in which he claims discrimination based upon vaccination status. (Doc. 16 at 4.) MHRB issued a reasonable cause determination that Port Authority illegally had discriminated against Myers when it required in-person attendees to show proof of vaccination. (*Id.*) MHRB scheduled a contested case proceeding before the OAH for March 21 to March 23, 2023. (*Id.* at 5.) The parties confirmed during the March 20, 2023 motion hearing that MHRB has vacated the hearing and has not set a new hearing date.

Federal-Court Procedural History.

Port Authority filed an initial Complaint before the Court on August 30, 2022. (Doc. 1.) Port Authority filed an Amended Complaint on September 6, 2022, and a Second Amended Complaint on October 19, 2022. (Doc. 3; Doc. 16.) Port Authority seeks a declaratory judgment that MHRB lacks jurisdiction to enforce Mont. Code Ann. § 49-2-312 on the Reservation. (Doc. 16 at 7.) Port Authority also seeks an order from the Court enjoining MHRB from enforcing Mont. Code Ann. § 49-2-312 on tribal lands against Port Authority. (*Id.*) The Court granted the Nation's motion to intervene as a plaintiff on November 15, 2022. (Doc. 38.) The Nation filed an Intervenor Complaint on November 15, 2022. (Doc. 39.) The Nation filed an Amended Intervenor Complaint on December 21, 2022. (Doc. 50.) The Nation added the following defendants to the action: Peter Damrow, Deb Broadbent, Curtis Almay, Ann Brodsky, Richard Bartos, and the Montana Human Rights Commission. (*Id.* at 4–5.)

Port Authority moved for a preliminary injunction and TRO on September 9, 2022. (Doc. 7.) Port Authority renewed its motion on October 19, 2022. (Doc. 19.) Defendants filed a Response on October 20, 2022. (Doc. 25.) Port Authority filed a Reply on October 31, 2022. (Doc. 29.) Defendants filed an additional Response on November 14, 2022. (Doc. 36.) The Nation filed a brief in support of Port

6

Authority's preliminary injunction and TRO motion on February 10, 2023. (Doc. 62.) Defendants filed a further Response on March 3, 2023. (Doc. 67.)

Defendants have filed a number of motions to dismiss. (Doc. 23; Doc. 59; Doc. 64.) The Court, at this time, will defer ruling on Defendants' pending motions to dismiss.

## LEGAL STANDARD

District courts enjoy discretion regarding the grant or denial of a preliminary injunction. *Envtl. Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020). A plaintiff seeking a preliminary injunction must establish the following four factors: (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).

Courts in the Ninth Circuit require a showing of "serious questions going to the merits" rather than "likelihood of success on the merits" for the first *Winter* element, should a plaintiff establish that the balance of hardships tips sharply in their favor. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The legal standard for a TRO under Fed. R. Civ. P. 65(b) proves the same as that for a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, *839* n.7 (9th Cir. 2001).

## DISCUSSION

The Court first addresses whether Port Authority has demonstrated a likelihood of irreparable harm. *Winter*, 555 U.S. at 20. Port Authority asserts that allowing the state administrative proceedings to continue will cause them irreparable harm in the following ways: (1) Port Authority cannot comply with both state and tribal laws when they are in conflict; (2) Port Authority faces potential liability if the state administrative proceedings continue; (3) Port Authority's relationship with the Nation would suffer if it has to hold future meetings off-Reservation; and (4) the state administrative proceedings intrude on the Nation's tribal sovereignty. (Doc. 20 at 8–9.) None of these contentions proves persuasive.

The record reveals that Mont. Code Ann. § 49-2-312 no longer conflicts with the Nation's laws or regulations; that the state administrative proceedings appear to be on hold; and that Myers himself never experienced a cognizable injury sufficient for federal-court standing and similarly may lack standing to proceed with his state administrative claim. Port Authority and the Nation have acknowledged the absence of a continuing COVID-19 vaccination mandate by the Nation or any tribal entity on the Reservation. MHRB has vacated the contested case hearing before the OAH. The parties confirmed during the March 20, 2023 motion hearing that the agency has not set a new date for the contested case

hearing. No evidence before the Court indicates when or whether DLI or MHRB will set a date for this hearing.

No one turned Myers away from attending the Port Authority's November 18, 2021 board meeting at BCC on the basis of his vaccination status. (Doc. 67-1 at 2–3.) Myers did not attempt to attend the board meeting at issue. (*Id.* at 2.) Myers never set foot on the Reservation on November 18, 2021. (*Id.*) Myers never disclosed his vaccination status to Port Authority. (*Id.* at 3.)

Indian tribes are "distinct, independent political communities" possessing sovereign authority. *United States v. Cooley*, ____ U.S. ____, 141 S. Ct. 1638, 1642 (2021). Tribes may "determine tribal membership, regulate domestic affairs among tribal members, and exclude others from entering tribal land" as a function of their sovereignty. *Id.* at 1642. The Court appreciates that federal law generally preempts the enforcement of state law within the boundaries of the Reservation where it "conflicts with" the Nation's law. *See Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*, 951 F.3d 1142, 1152 (9th Cir. 2020). The Nation is not a party, however, to the state administrative proceedings. Port Authority is not a tribal entity and may not assert the protections of tribal sovereignty. Port Authority may not invoke prejudice to the Nation's tribal sovereignty flowing from the State of Montana's exercise of jurisdiction over Port Authority in the state administrative proceedings.

Port Authority has provided no evidence of imminent irreparable harm, much less the likelihood of irreparable harm required for injunctive relief. *Winter*, 555 U.S. at 20; *Carlson*, 968 F.3d at 989. The Court declines to address the merits in light of the Court's determination that Port Authority has failed to carry its burden to demonstrate entitlement to injunctive relief or a TRO.

## CONCLUSION

The Court, in its discretion, will deny Port Authority's preliminary injunction and TRO motion (Doc. 19) pursuant to Fed. R. Civ. P. 65. Port Authority may renew its motion for preliminary injunction and TRO should DLI or MHRB set a date for the contested case hearing in the state administrative proceedings.

## ORDER

Accordingly, **IT IS ORDERED:**

1. Plaintiff Glacier County Regional Port Authority's Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 19) is **DENIED.**

2. Port Authority may renew its motion for preliminary injunction and TRO should DLI or MHRB set a date for the contested case hearing in the state administrative proceedings.

DATED this 24th day of March, 2023.

_____
Brian Morris, Chief District Judge
United States District Court